# COUNTY COMMISSIONERS OF PRINCE GEORGE'S COUNTY *v.* EDWARD TIMMONS.

*Defective Bridge—Action Against County—Evidence—Contributory Negligence—Knowledge of Defects—Damages—Harmless Error.*

In an action against a county by one injured by the collapse of a bridge over which he was helping to drive a heavy threshing outfit, evidence that plaintiff had been told by another that the latter had previously crossed the bridge with such an outfit was admissible on the issue of plaintiff's contributory negligence, although inadmissible as hearsay if intended to show that such an outfit constituted part of the usual travel over the bridge.                                    p. 515

The admission of evidence which, while admissible for one purpose, is inadmissible for another, is not reversible error, if appellant failed to ask that it be limited to the former purpose.

p. 516

The negligence of an employer in undertaking, in spite of a warning, to drive a heavy threshing machine over a bridge, which collapsed under the weight, could not be imputed to his employee engaged in helping him move the machine, who was ignorant of the warning.          pp. 516, 517

Where a witness, who had testified to having driven threshing outfits over defendant's bridge, which collapsed under such an outfit driven by plaintiff, when asked if he knew of any other who had done so, replied that "Mr. O. threshed there, and I guess he went that way, I suppose," the erroneous refusal of a motion to strike out the words "I suppose" was harmless, as the grant of the motion would still have left the "guess" or conjecture of the witness before the jury.          p. 517

Error in refusing to direct a verdict for defendant at the conclusion of plaintiff's case is waived if defendant proceeds to take testimony and goes on with the case.          p. 517

In an action against a county for injuries caused by the collapse of a bridge, a refusal to strike out a statement by a witness that, at a meeting at the scene of the accident between the county commissioners and officials of a neighboring town, the commissioners "acknowledged their responsibility," *held* not reversible error, in view of the witness' subsequent explanation and remarks by the court, which clearly showed that what the commissioners assumed was responsibility, not for the accident, but for the maintenance and rebuilding of the bridge.

pp. 518-520

The ends of justice require that attorneys be given every proper latitude in advocating their client's cause, and only in cases of palpable abuse of this latitude, resulting in real injury to the other party, should the comment of counsel on evidence be regarded as requiring a reversal.          p. 520

A prayer, at the conclusion of the whole case, for a directed verdict in favor of defendant, was properly refused as bad in form, when it referred to the plaintiff's testimony only and not to all the testimony.          p. 521

By conceding prayers of the plaintiff which submitted the case to the jury, defendant made these prayers the law of the case, and waived any right to a directed verdict.          p. 522

A damage prayer may properly include the element of mental suffering, although there is no direct evidence of such suffering.
p. 522

Mental suffering being a necessary concomitant of physical pain, where such pain is shown, the jury may assume that it was accompanied by mental suffering, and allow the injured party some additional damages because of such suffering.          p. 522

If roads and bridges become to a greater or less extent defective, the public does not necessarily assume all the risk attendant upon using them after it acquires knowledge of the defects, but is only required to use due care and caution, taking into consideration the nature and extent of the defects.
p. 523

In an action for injuries caused by the collapse of a bridge over which plaintiff was helping his employer to move a heavy threshing outfit, *held* that plaintiff's receipt of a warning from a witness, not shown to be intimately acquainted with the bridge, that it was unsafe for such an outfit, did not justify the withdrawal of the case from the jury, in view of the evidence that plaintiff was familiar with the bridge by reason of having helped to lay the floor three years previously, that he knew that other such outfits had crossed it, that his employer had inspected it, and that a year or two previously automobile traffic from the state road, including heavy trucks, had been detoured over it, and there being testimony that a casual inspection would not have disclosed the rusted condition of the iron work.          pp. 524, 525

*Decided April 9th, 1926.*

Appeal from the Circuit Court for Prince George's County (Digges, C. J., Mattingly, and Loker, JJ.).

Action by Edward Timmons against the County Commissioners of Prince George's County and another. From a judgment against the named defendant, it appeals. Affirmed.

The cause was argued before BOND, C. J., URNER, ADKINS, OFFUTT, PARKE, and WALSH, JJ.

*William J. Neale,* with whom was *George B. Merrick* on the brief, for the appellant.

*Ogle Marbury,* for the appellee.

WALSH, J., delivered the opinion of the Court.

This appeal is taken from a judgment of the Circuit Court for Prince George's County in favor of the appellee, who sued the county commissioners of that county for damages for injuries sustained by him when the Brooklyn Bridge, situated on the outskirts of the town of Laurel, collapsed. The suit was originally brought against the Mayor and City Council of Laurel, a municipal corporation, as well as against the appellant, The County Commissioners of Prince George's County, on the theory that the location of one end of the bridge within the limits of the town of Laurel rendered the town equally responsible with the county commissioners for the proper construction and maintenance of the bridge, but the trial below resulted in a judgment against the county commissioners alone, and it is not contended on this appeal that any responsibility for the injuries complained of rested upon the Mayor and City Council of Laurel.

It appears from the record that in August, 1924, the appellee was a laborer employed by one John Sadilik, and that Sadilik was engaged in operating a threshing outfit, consisting of a traction engine, thresher, and water barrel. It was the practice in that locality to move this outfit from farm to farm for threshing purposes, and the appellee, his employer, and three colored helpers, were engaged in such a movement when the accident complained of occurred. On August 27th, 1924, they threshed wheat on the farm of Mr. Herman Millard, spent the night there, and on the following morning left the Millard farm to go to the farm of Mr. William Thorp, which was about a mile and a half away. The most direct route between these two farms was along a road which crossed

the Brooklyn Bridge, and when the traction engine, with the thresher and water barrel attached, got on this bridge, it collapsed and precipitated the threshing outfit, together with the appellee and Sadilik, who were on the engine, to the water below. As a result of this fall, Sadilik was killed, and the appellee sustained the injuries for which this suit was brought. It also appeared that at the time of the accident the appellee was steering the traction engine and Sadilik was firing and running it, and that the appellee had received some warning from Mr. Millard the night before that the bridge was unsafe for such an outfit as the appellee was working on. It further appeared that the bridge was what is known as a one-span bridge, that the iron work on the bridge was badly rusted, that some three years before a new flooring, weighing approximately twelve tons, had been laid over the old flooring, and that no engineer had been consulted as to the ability of the bridge to safely carry this additional weight, and there is also testimony tending to show that the county commissioners knew, or by the exercise of due diligence could have known, of the defective condition of the bridge, and, by the exercise of similar diligence, could have repaired it before it collapsed.

There are seven exceptions in the record, the first, second, third, fifth and sixth involving rulings on evidence, and the fourth and seventh having been taken to the action of the learned court below on the prayers.

The first exception was taken to the refusal of the trial court to strike out the appellee's statement that Sadilik had told him he had crossed the bridge in question with a threshing outfit. The appellant contends that this testimony was intended to show that threshing outfits constituted part of the usual and ordinary travel over the Brooklyn Bridge, and being, in this view of it, hearsay, was inadmissible. On the other hand, the appellee insists that the testimony was intended to show that he had information that similar outfits had gone over the bridge, and so was competent on the question of his contributory negligence, which was an issue in the case. Both of these views seem sound, and as the testimony

was admissible for one purpose, and the appellant failed to ask that it be limited to that purpose, we cannot hold that its admission was reversible error. In addition to this, the witness Wooten testified later that he had actually driven across this bridge with Sadilik about three years before on the same outfit on which the appellee was riding when injured, so that no substantial injury could have been done the appellant by admitting the testimony objected to.

The second exception was taken to the refusal of the trial court to permit the witness Fleister to testify on cross-examination that he had advised Sadilik of the unsafe condition of the bridge. The appellant contends that this testimony was admissible on the theory that the alleged negligence of the employer Sadilik, in crossing the bridge, and in permitting his employee to cross it, after he was warned of its condition, can be imputed to his employee, the appellee. To this we cannot assent. The appellee's rights in this case do not grow out of his status as an employee, they are his personally and individually, and we are unaware of any principle of law by which an employer can, without the knowledge or consent of his employee, deprive the latter of his right to sue for damages for injuries inflicted upon him by the negligence of a third person. It was held by this Court in *Western Md. Rwy. Co. v. Shatzer*, 142 Md. 286, that "where a carrier transports the employees of a telegraph company under a special contract, a provision in the contract, exempting the carrier from liability for injuries to such employees caused by its negligence, is valid, but it is not binding on an employee who has no knowledge of the contract." If an employer cannot directly waive his employee's right to recover damages for injuries caused by the negligence of a third person, we do not think such waiver can be accomplished indirectly by imputing the contributory negligence of the employer to the employee, unless the latter in some way acquiesced or participated in it. Here the alleged contributory negligence of the employer consisted in his failure to heed a warning as to the safety of a public bridge, and, as the employee had no knowl-

edge whatever of this warning, it would be manifestly unjust to hold him bound by it. Counsel for the appellant admit that their theory is a novel one, but they allege that it is sustained by the decision in the case of *Lundergan v. New York Central and Hudson River Railroad,* 203 Mass. 460, and that they have been unable to find any decisions holding a contrary view. A careful reading of the *Lundergan* case shows that, although some of the language used in the opinion might be construed as giving support to the views of the appellant, the case itself does not establish the rule contended for by the appellant, and as such a rule would, in our opinion, be contrary to the most elementary principles of justice, we must decline to adopt it. We accordingly find no error in the ruling covered by the second exception.

The witness Wooten, after having testified that he had driven several threshing outfits over the Brooklyn Bridge, was asked if he knew of anyone else who had ever driven an engine over the bridge, and he replied: "I have never seen it, but Mr. O'Neill threshed there, and I guess he went that way, I suppose." The appellant thereupon moved to strike out the words "I suppose" in the witness' answer, and the overruling of this motion is the basis of the third exception. There is no doubt that this ruling was incorrect, but we do not think the error sufficiently prejudicial to warrant a reversal. Had the motion been directed to the entire answer a more serious question would have been presented, but as the granting of the motion would still have left the "guess" or conjecture of the witness before the jury, we do not feel that the failure to strike out the added words "I suppose" could have affected the result of the trial in any substantial way.

The fourth exception brings up for review the action of the trial court in refusing to grant the defendant's first prayer, asking for a directed verdict at the conclusion of the plaintiff's case. Even had the Court committed an error in refusing to grant this prayer, the appellant waived it by proceeding to take testimony and going on with the case,

and it cannot now complain of the ruling. *Cohen v. Herbert,* 145 Md. 203; *Washington County v. Gaylor,* 140 Md. 379; *Krymski v. Kupidlowski,* 139 Md. 656; *Baltimore Car Wheel Co. v. Clark,* 131 Md. 516; *Bernstein v. Merkel,* 126 Md. 454; *Knecht v. Mooney,* 118 Md. 583; *Pennsylvania Railroad Co. v. Cecil,* 111 Md. 288.

The fifth exception was taken to the refusal of the court to strike out the statement of the witness Donaldson, "that at the joint meeting between the Mayor and City Council and the county commissioners at the site of the wreck, that the county commissioners acknowledged their responsibility of it." And the sixth exception was taken to the refusal of the court to grant a renewal of the motion to strike out this same testimony and the following comment of counsel for the appellee upon it: "Your Honor, I did not produce it, but I am very glad it got in. If the County Commissioners of Prince George's County have a meeting at the scene of the accident and all the commissioners present, and in public meeting they acknowledge their responsibility for an accident, it seems to me that is competent to go to the jury in a case where they are being sued for damages."

After the taking of the fifth exception, and after the above quoted statement of counsel was made, the witness, Donaldson, was examined and testified in part as follows: "Q. Mr. Donaldson, did the county commissioners at that meeting say to you that if any damages were recovered against the town that they would be responsible for them? A. No. Q. They did not say that— A. No. Q. They were not discussing that phase of it at all? A. How is that? Q. They were not discussing that phase of it at all? A. If I understand what the meeting was for—and I think I do—it was to have an understanding between the town of Laurel and the county commissioners as to who was responsible for this bridge—as to who was responsible for this bridge and who owned this bridge? Q. And they said it was their bridge? A. It was their bridge. Q. Did they say that they were themselves responsible for the happening of this accident?

A. Absolutely no.  Q. They said no?  A. Why, of course not.  Q. They simply said that as between the Town of Laurel and the county commissioners, that that bridge belonged to the county commissioners?  A. Exactly so.  Q. They said nothing about being responsible for the happening of this accident?  A. Why, no."

Counsel for the appellant then renewed the motion to strike out the testimony, which was the subject of the fifth exception, and also asked that the quoted comment of appellee's counsel be stricken out.  Thereupon the court, speaking through Chief Judge Digges, said: "The witness has explained what he meant by it.  It is perfectly clear what the witness has said, that what the county commissioners said was that it was their bridge, that they built it and they were responsible for the maintenance of it.  This witness said that the county commissioners did not recognize, in his presence, any responsibility for this accident."  According to the record, counsel for the appellant then excepted to the court's refusal to grant the motion above mentioned, and this refusal, as we said above, constitutes the sixth exception.

The appellant's objection to this testimony is based on the theory that it was simply the statement of one or more of the individual members of the board of county commissioners, made at an alleged informal meeting, and so cannot be used to officially bind the board, but in the view which we take of the matter it will not be necessary to pass upon that question.  It is apparent both from the record and from the appellant's brief that its reason for objecting to the testimony of the witness, and the statement of counsel, was the alleged tendency of both the testimony and statement to show that the appellant admitted liability for the accident complained of, and there was no objection made to it on the ground that it virtually released the town of Laurel from any responsibility for the accident.  In fact, as we stated in the first part of this opinion, no appeal was taken from the judgment rendered in favor of the Mayor and City Council of Laurel, and the appellant is not here contending that the town of Laurel was

## 520 PRINCE GEORGE'S COUNTY v. TIMMONS.

responsible, or that any error was committed by the trial
court in its rulings regarding the town. It accordingly fol-
lows that it is unnecessary for us to determine whether the
testimony was admissible so far as it related to the town
of Laurel, because that question is not before us. This only
leaves for our consideration the question of whether the testi-
mony and statement should have been stricken out because
they are alleged to show that the appellant was liable in dam-
ages for the injuries caused by the accident. The testimony
complained of cannot, in itself, be said to justify any such
conclusion. The witness was talking of a joint meeting held
at the site of the accident by the Mayor and City Council
of Laurel and the County Commissioners of Prince George's
County, and, after stating that the commissioners had made
no request of the town to assume the cost of re-building the
bridge, he testified, in response to the question whether any
suggestion was made that the town participate in this cost,
that no such suggestion was made, and "that the county com-
missioners acknowledge their responsibility of it." The
most that can be said of this is that it is a bit ambiguous,
and might, if unexplained, lead a jury to infer that the
commissioners acknowledged liability for the accident, but
when considered in connection with the full explanation
which the witness later made, together with Judge Digges'
statement as to what the witness meant and what he did not
mean, it would be difficult to imagine anyone being misled
by it, and certainly it cannot be said that the failure of the
court to strike it out constitutes reversible error. Nor do we
think the refusal of the court to strike out the statement of
appellant's counsel, made in discussing the admissibility of
this testimony, justifies a reversal of the judgment appealed
from. It is unusual to hold that statements made by counsel
in arguing the admissibility of evidence constitute error, and
it can readily be perceived that the ends of justice require
that attorneys be given every proper latitude in advocating
their client's cause, and that only in cases of a palpable abuse
of this latitude, resulting in real injury to the other party,

should an appellate court say that the comment of counsel requires a reversal. In the present case, if any harm was done the appellant by the statement complained of, it would appear to have been cured by the subsequent explanation of the witness, Donaldson, as to what he meant, and the further statement of the court as to what the witness meant. Juries know that counsel are not witnesses, and we are not inclined to question their ability to distinguish between statements made by each, unless it seems probable from the surrounding circumstances that the statement complained of actually did mislead them. In the present case, we find no such probability.

This brings us to a consideration of the seventh exception, which covers the court's action in refusing to grant the first, third and fourth prayers of the defendant, and in granting the fourth prayer of the plaintiff.

At the conclusion of the whole case the defendant again offered the same demurrer prayer which it had offered at the conclusion of the plaintiff's case, which prayer reads as follows:

"The defendant, the county commissioners pray the court to instruct the jury that there is no evidence legally sufficient to show negligence on the part of the county commissioners in constructing and maintaining the bridge in question. Nor is the whole of the evidence submitted by the plaintiff sufficient to warrant the jury in finding that the accident happened as the result of the negligence of the defendants, the county commissioners, and their verdict must, therefore, be for the defendants, the County Commissioners of Prince George's County."

The first sentence in this prayer seems to be all right, but the second part of it is bad in form because it refers only to the plaintiff's testimony instead of to all the testimony, and all the testimony had to be considered in determining whether there was sufficient evidence to go to the jury. Under the recent decision of this Court in the case of *Fidelity and Dep. Co. v. Panitz,* 142 Md. 300, 303, there was no error in refus-

ing a prayer containing the defect found in the second part of the prayer under consideration, and as the prayer was offered as a whole, we are compelled to hold that its refusal in this case was proper. We wish to say, however, in this connection, that there was, in our opinion, sufficient evidence of negligence on the part of the county commissioners in constructing and maintaining the bridge to require the submission of that question to the jury. And this was also apparently the view of the appellant, for it conceded the first and third prayers of the plaintiff submitting the case to the jury, and by so doing it made these prayers the law of the case, and waived any right it might have had to secure a directed verdict. *Kelso v. Rice,* 146 Md. 267, 276; *Hillers v. Taylor,* 116 Md. 165, 172. We accordingly find no error in the refusal of the trial court to grant the defendant's first prayer. The plaintiff's fourth prayer, which is the usual damage prayer, is objected to by the appellant on the ground that in this case there is no evidence showing any "mental suffering" on the part of the plaintiff, and that hence this element should not have been included in the prayer. We do not think this objection is tenable. Similar damage prayers have been repeatedly approved by this Court, apparently without any reference to the presence *vel non* of any direct evidence of mental suffering. . See *McMahon v. Northern Cent. R. Co.,* 39 Md. 438; *Pittsburgh etc. R. Co. v. Andrews,* 39 Md. 329; *Baltimore v. Wallace,* 77 Md. 437; *Balto. & O. R. Co. v. Kean,* 65 Md. 396; *People's Passenger Railroad Co. v. Green,* 56 Md. 86; *Ottenheimer v. Molohan,* 146 Md. 175; *Brown v. Patterson,* 141 Md. 293. And the general rule seems to be that mental suffering is a necessary concomitant of physical pain; the former flows from the latter, and where the physical pain is shown, the jury has the right to assume that it was accompanied by mental suffering, and to allow the injured party some additional damages because of this suffering. Sec. 17 *C. J.* 828 to 830, 832 to 835, and numerous cases cited in the notes. And finally, in the present case, there is direct evidence of mental suffering, one of the

doctors who testified for the plaintiff having stated that, because of the brain concussion suffered by the plaintiff in the accident, there would be "terrific depression for some time." We accordingly find no error in the granting of the plaintiff's fourth prayer.

This brings us to a consideration of the court's action in rejecting the third and fourth prayers of the defendant. The third prayer asked the court to instruct the jury that, if they found that the plaintiff was warned by the witness Millard, or any other competent person, of the defective condition of the bridge, or that he heard his employer warned, that he assumed all risk attendant upon crossing it and could not recover, and the fourth prayer asked for an instruction that the warning about the bridge did not have to come from some officer or agent of the county, but it would be sufficient if it were given by some person familiar with the bridge, and that such warning would bar plaintiff from recovering despite the failure of the defendant to place any warning sign on the bridge.

Both of these prayers are based on the theory that the plaintiff could not recover if he was warned by any competent person that it was unsafe to cross the bridge with a threshing outfit. We do not think this theory is sound. Public roads and bridges are built and maintained for the use and convenience of the public, and it is the duty of county commissioners, or other public officials, charged with their construction and maintainence, to see that they are safe for the ordinary and accustomed mode of travel and transportation over them in the localities in which they are placed. If, as frequently happens, the roads and bridges become to a greater or less extent defective, the public does not necessarily assume all the risk attendant upon using them after it acquires knowledge of the defects, but is only required to use due care and caution, taking into consideration the nature and extent of the defects. The rule is thus stated in the case of *County Commissioners v. Burgess,* 61 Md. 29, 34, 35: "The extent to which the road or bridge is out of repair is always a mate-

rial question, and upon that depends the effect of a plaintiff's knowledge upon his right to recover. If the defect was so extensive as to make any attempt to cross reckless, and the plaintiff so knew, and still endeavored to cross, we have said already, that in such state of proof the case should be withdrawn from the jury; but ordinarily it would be a question for the jury under instructions respecting their duty if they found a particular state of facts. In this case the knowledge of the plaintiff was some evidence of negligence, proper to go to the jury, to be considered by them in conjunction with the condition of the bridge of which he had knowledge, and to be found a bar only in case they found the bridge from the proof to be wholly unfit for use, and that he knew its true condition. His knowledge was not necessarily conclusive against his right to recover unless the defect was such that no reasonably prudent man would have ventured an attempt to cross." And to the same effect, see *Allegany County r. Broadwaters,* 69 Md. 533, 535, 536; *Vannort r. Chestertown,* 132 Md. 685, 690, and *Masheuvel v. District of Columbia,* 191 U. S. 247.

In the present case, while there was testimony that the plaintiff had received some warning from the witness Millard that the bridge was unsafe, there was also testimony that he knew that other threshing outfits had crossed the bridge, and that his employer had inspected the bridge just before they attempted to cross it. And it further appeared that the plaintiff had helped lay the new floor on the bridge three years before, and had thus become familiar with it, that a year or·two before the accident traffic from the state road, consisting of automobile traffic of all sorts, including heavy trucks, had been detoured over this bridge, and finally there was testimony that a casual inspection would not have disclosed the rusted condition of the iron work supporting the bridge. Conceding that this testimony was inconclusive, we nevertheless think it was sufficient to require submitting to the jury the question of whether the plaintiff's action in at-

tempting to cross the bridge was, under all the circumstances of the case, so negligent as to bar his recovery. In other words, we do not think the warning given by Millard, a witness who is not shown to have had any intimate knowledge of the condition of the bridge, conclusively establishes the contributory negligence of the plaintiff. There was, therefore, no error in rejecting the third and fourth prayers of the defendant.

Finding no reversible error in the rulings appealed from, the judgment will be affirmed.

*Judgment affirmed, with costs to the appellee.*