Julia E. Buell, as Administratrix of the Estate of Charles E. Buell, Deceased, Appellant, *v.* Utica Gas and Electric Company, Respondent.

(Argued June 20, 1932; decided July 19, 1932.)

*W. R. Pratt* for appellant. The Appellate Division erroneously held that the defendant owed no duty to the owner or persons lawfully on the railroad siding over which defendant transmitted 44,000 volts of electricity in bare wires. (*Wells* v. *Tolman*, 156 N. Y. 636; *Bakeman* v. *Talbot*, 31 N. Y. 366; *Burrows* v. *Livingston Niagara Power Co.*, 217 App. Div. 206; 244 N. Y. 548; *Adams* v. *Bullock*, 227 N. Y. 208; *City of Henderson* v. *Ashby*, 14 A. L. R. 1018; *Van Leet* v. *Kilmer*, 252 N. Y. 454; *Braun* v. *Buffalo General Electric Co.*, 200 N. Y. 484; *City of New York* v. *Interborough Co.*, 125 App. Div. 437; 194 N. Y. 528; *Bergen* v. *Morton Amusement Co.*, 178 App. Div. 400; 226 N. Y. 665; *Spies* v. *Damm*, 54 How. Pr. 293; *Tobias* v. *Cohn*, 36 N. Y. 363; *Speich* v. *International Ry. Co.*, 219 App. Div. 626; *Constantino* v. *Watson Contracting Co.*, 219 N. Y. 443; *McLean* v. *Studebaker Bros. Co.*, 221 N. Y. 475.) The Appellate Division erroneously held that the employer of the deceased was bound to adjust his use of the land to the defendant's use of its easement. (*Booth* v. *R., W. & O. R. R. Co.*, 140 N. Y. 268; *Barber* v. *Hudson River Telephone Co.*, 105 App. Div. 154.)

*Arthur J. Foley* for respondent. The Appellate Division rightly held that in view of defendant's recorded right of way deed and its possession thereunder, it was under no duty, as to plaintiff's intestate and his employer, to raise its wires. (*Pope* v. *O'Hara*, 48 N. Y. 446;

*Adirondack Power & Light Corp.* v. *Evans*, 226 App. Div. 490; *Haight* v. *Littlefield*, 147 N. Y. 338; *Harris* v. *Curtis*, 139 App. Div. 393; *Onthank* v. *L. S. & M. S. R. R. Co.*, 71 N. Y. 194; *Dexter* v. *Beard*, 130 N. Y. 549; *Nichols* v. *N. Y. & Penn. Tel. & Tel. Co.*, 126 App. Div. 184; *Herman* v. *Roberts*, 119 N. Y. 37; *Hickok* v. *Auburn L., H. & P. Co.*, 200 N. Y. 464; *Heskell* v. *Auburn L., H. & P. Co.*, 209 N. Y. 86; *Troidle* v. *Adirondack P. & L. Corp.*, 252 N. Y. 483; *Robbins* v. *Minute Tapioca Co.*, 236 Mass. 387; *Bruso* v. *Eastern States Exposition*, 168 N. E. Rep. 206.) Defendant was not negligent. (*Magee* v. *N. Y. Tel. Co.*, 213 N. Y. 232; *Troidle* v. *Adirondack P. & L. Co.*, 252 N. Y. 486; *Heskell* v. *Auburn H., L. & P. Co.*, 209 N. Y. 86; *Bruso* v. *Eastern States Exposition*, 168 N. E. Rep. 206; *Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339.) The negligence of the employer of plaintiff's intestate in the continued operation of the crane with knowledge of the dangers involved was the proximate cause of his death. (*Magee* v. *N. Y. Tel. Co.*, 213 N. Y. 232; *Leeds* v. *N. Y. Tel. Co.*, 178 N. Y. 118; *Malatesta* v. *Atlantic City & S. R. Co.*, 96 Atl. Rep. 54; *Stackpole* v. *Pacific G. & E. Co.*, 186 Pac. Rep. 354; *Boudreaux* v. *Louisiana P. & L. Co.*, 135 So. Rep. 90.)

CRANE, J. The plaintiff's intestate, Charles E. Buell, was electrocuted while standing in a railroad car on a siding underneath the defendant's high power transmission wire. The forty-foot boom of a derrick apparently had struck the wire transmitting the electricity through Buell's body. A verdict of $5,000 was set aside by the Appellate Division and the complaint dismissed.

The question on appeal turns on the duty which the defendant owed to the deceased. That the wire was extremely dangerous is apparent from the fact that it carried 44,000 volts of current.

On the 8th day of October, 1919, Charles A. Saxton, of Washington Mills, and others, as owners, granted by deed to the Utica Gas and Electric Company, of Utica,

N. Y., " the right, and privilege to erect and maintain an electric power transmission line or lines and to transmit electricity and electric current upon and across the lands of the party of the first part, situate in the Town of New Hartford, County of Oneida, and State of New York, together with the right to enter upon said premises and transport thereon all poles, towers or other supports, wires, cross-arms, insulators and all other material necessary and proper to set said poles, towers or other supports and to string all wires thereon suitable and proper to constitute a proper and suitable electric power transmission line or lines with the right to inspect, operate and to repair and maintain same with necessary poles, supports, wires and guys.

" Said right of way, being a strip of land sixteen and one-half (16½) feet wide, and about thirty-eight (38) rods in length, the centre line of which is described as follows: Beginning at a point in the division line between lands of J. Douglas and lands of party of the first part at an iron pipe distant 8.25 feet westerly from the westerly division line of the Delaware, Lackawanna and Western Railroad Company, and running thence S. 5 degrees 00′ W. 659.5 feet; thence in a straight line 400 feet to an iron pipe in the division line between lands of party of the first part and lands of James Coupe, distant 8.25 feet westerly from the westerly right of way line of the Delaware, Lackawanna and Western Railroad Company.

" The party of the second part, its successors or assigns, is also hereby given and granted the right and privilege to cut any brush, trees or branches, standing, or being within fifty (50) feet of the center line of the above described right of way.  *  *  * "

Clare and Jones became the owners in 1922 of the property, and in 1924 had a railroad siding built on the westerly side of the railroad tracks, which connected with the Delaware, Lackawanna and Western railroad.  That railroad ran north and south, and this side, or spur track,

branched off in a southwesterly direction running diagonally — slantwise — under the defendant's wires. The spur track, therefore, was not under the wires at all points; it crossed under the wires and was thus directly beneath the wires at only the crossing point or angle. The spur track extended for some distance on both sides of the wires. Before the spur track was installed, the wires had been raised, at the expense of the railroad, to the height of twenty-nine and one-half feet above the siding. We may assume, for it is not questioned, that this height was sufficient to render the place safe for all railroad purposes; for instance, a man standing in a box car underneath the wires, could not lift any beam which was long enough to reach up twenty-four or twenty-five feet into the air. Therefore, there was no reasonable likelihood of anybody striking this wire in lifting things off of the box cars.

The electric company, therefore, had no reason to anticipate that the position of its wires would constitute a danger to persons using the siding, the railroad or the adjoining property, in the usual and customary way. Even with an easement or right of way granted to it by deed, the defendant would be under a duty to place its high tension transmission wires out of danger to those who would be in the vicinity using adjoining property in a way that could be reasonably anticipated. Such was *Braun* v. *Buffalo General Electric Co.* (200 N. Y. 484).

This siding, however, became dangerous solely because a contractor, Law Brothers Contracting Corporation, had stationed a movable crane with a beam forty feet in height near to or at the crossing. This contractor was building a roadway near the property and was storing materials near-by. It used the crane to lift the materials out of the box car. As the beam swung near to the wires it was apparent that if the wires were touched somebody would be killed. All realized the danger. The electric light company had full notice and examined the place

Law Brothers Contracting Company knew the danger and cautioned its men. Buell knew the danger and signaled for the boom to stop three feet from the wire. Under these circumstances, with knowledge upon the part of every one, where rested the duty to avoid the danger? To us it seems apparent that it rested upon the contractor. This contractor selected the place and the site to do the work; it was a dangerous place; the contractor should have made it safe by either moving the cars beyond the crossing, shifting its plant, or else by arrangement with the electric company to lift its wires. This the company could easily have done; it was done the day after Buell's death, by erecting higher poles. This took but a few hours. The electric light company never refused to do it, but insisted upon pay for making the change. The contractor would not wait, but went on with the work.

As the wires (and this is the point) were reasonably safe for all usual and customary user of the siding or spur track, and were out of reach of any apparent danger — apparent from ordinary use — the company was not bound to move its wires because of some extraordinary, special and temporary use being made of the crossing by a contractor. No doubt the Public Service Commission or the courts could have required a temporary removal for another public service user, such as the building of a crossing, or the installation of telegraph wires or a railroad. The electric company, however, did not refuse to accommodate itself to the contractor's use, even if we consider his work in constructing a road crossing as public work. The contractor should have waited until the wires were raised, or have arranged to pay for the change, and not have proceeded in the face of such tremendous danger.

The judgment should be affirmed, with costs.

POUND, Ch. J., LEHMAN, KELLOGG, O'BRIEN and HUBBS, JJ., concur; CROUCH, J., not sitting.

Judgment affirmed.