**CONOWINGO POWER CO. v. STATE OF MARYLAND, to Use of MARSHALL.**

**No. 4767.**

Circuit Court of Appeals, Fourth Circuit.

June 10, 1941.

Roszel C. Thomsen and Walter L. Clark, both of Baltimore, Md. (Edwin W. Lowe and Robert E. Coughlan, Jr., both of Baltimore, Md., on the brief), for appellant.

Leonard Weinberg and Everett L. Buckmaster, both of Baltimore, Md. (Weinberg & Green, and George H. Dowell, all of Baltimore, Md., on the brief), for appellee.

Before PARKER and SOPER, Circuit Judges, and MOORE, District Judge.

PARKER, Circuit Judge.

This is an appeal by defendant in a wrongful death case in which there was verdict and judgment for the plaintiff. Decedent was employed by the Bethlehem Steel Company, which was engaged in constructing a bridge over the Susquehanna River between Perryville and Havre de Grace, Maryland. On November 28, 1938, he was engaged with other employees of the steel company in moving some iron pipe by means of a steel cable suspended from a "gennywink" on the bridge, when the cable came in contact with high tension wires of the defendant, Conowingo Power Company, and he was electrocuted. Three questions are presented by the appeal: (1) Whether verdict should have been directed for the defendant; (2) whether there was error in the charge of the court; and (3) whether there was error in admitting the testimony of an expert with respect to methods which might have been followed by defendant to remove the danger of contact with its wires. We think that all of these questions must be answered in the negative.

The principal contention of defendant is that verdict should have been directed in its favor. This is based upon the contention that no breach of duty on the part of defendant was shown, that decedent was guilty of contributory negligence and assumed the risk of injury by the method employed in moving the pipe and that, at all events, the negligence of defendant was not the proximate cause of his death, which, it is said, resulted from his own negligence and that of his foreman as an intervening efficient cause. This requires an analysis of the facts.

The bridge under construction by the steel company crossed a power line of defendant which ran beside the Frenchtown road beneath the bridge. High tension power lines carrying 33,000 volts of electricity were strung on the top cross arm of a pole ten or fifteen feet beneath the bridge. Four feet beneath this cross arm was another and shorter one bearing wires carrying 4,000 volts and other wires carrying lower voltage; and the high tension wires on the upper cross arm extended farther from the pole than the wires on the lower. Early in October, defendant began cutting off the electricity from the 33,000 volt wires, from 7 o'clock in the morning until five in the afternoon, for the protection of the workers on the bridge; and the workers were notified that this was being done and that these wires were dead. The electricity was not cut off of the wires on the lower cross arm and the workers were warned not to come in contact with them. Early in November, defendant without notice to the steel company or the workers on the bridge, ceased cutting off the current on the 33,000 volt wires; and these wires were carrying this deadly current of electricity at the time of the fatal accident, without the knowledge of the men working in their vicinity.

Sections of drainage pipe to be used under the bridge over the Frenchtown road were delivered under the bridge on the east side of the road. These sections were 20 feet long and weighed approximately 1,000 pounds each. Before they could be hoisted into position, it was necessary that they be moved from the east to the west side of the road. This was done by placing a "gennywink" on the bridge, suspending a steel cable therefrom, raising a section of pipe from the ground by means of the cable and then swinging it into position by hand. Decedent's duty in this operation was to stand on the ground and guide the pipe into position. At the time that he received the fatal injury, he was handling the last section of pipe. The "gennywink" had been placed on the bridge in such position that the steel cable projected downward approximately three and one-half to five feet distant from the 33,000 volt wires on the top cross arm. The end of the cable was fastened about the pipe, one end of which was placed against the pole of defendant. Decedent then attempted to push the pipe into position and was having difficulty in doing so, when his

foreman came to his assistance and both were killed as a result of the cable touching a high tension wire, or coming so near to it that the electricity arced over the intervening distance.

The steel company had been hoisting parts of the bridge near the high tension wires to the knowledge of the "trouble" man of the defendant for a considerable period of time; and, in the course of one operation, contact had been made with the 4,000 volt wires with no greater damage than the blowing of a fuse. After the riveters had finished working directly above the wires, the "trouble" man of defendant had suggested to the steel company's superintendent that there was no further occasion for de-energizing the wires but was requested to continue doing this so long as men were working near them. When the riveters moved to another section of the bridge, however, he ceased de-energizing the wires without notice to the steel company or the workers and there was nothing to apprise them of the changed condition.

Taking these facts in the light most favorable to plaintiff, as we must on the motion for directed verdict, we cannot say that they fail to show breach of duty on the part of defendant. The duty rested upon defendant to use the very highest degree of care practicable to avoid injury to everyone who might be lawfully in proximity to its wires, and liable to come, accidentally or otherwise, in contact with them. Brown v. Edison Electric Illuminating Co., 90 Md. 400, 45 A. 182, 45 L.R.A. 745, 78 Am.St.Rep. 442; Smith v. Appalachian Electric Power Co., 4 Cir., 74 F. 2d 647; Ashby v. Philadelphia Electric Co., 328 Pa. 474, 195 A. 887; notes 14 A.L.R. 1023, 56 A.L.R. 1021. And the rule is not different because of the fact that the wires were in place before the construction of the bridge was begun. This is not the case of an extraordinary, special or temporary use of premises, such as was dealt with in Buell v. Utica Gas & Elec. Co., 259 N.Y. 443, 182 N.E. 77, but of extensive operations rightfully conducted in proximity to the wires. Directly in point is Smith v. Appalachian Electric Power Co., supra, where we dealt specifically with the doctrine applicable in such cases and exhaustively reviewed the authorities. Speaking through Judge Soper, this Court said in that case [74 F.2d 651]:

"We are in accord with the rule applied in these decisions, and are thus of opinion that an electric power company, maintaining its wires on private property, is bound to exercise due care when other occupants, in normal and rightful use of the premises, erect structures in proximity to its lines, in the event that persons rightfully in, on, or about such structures for work, business, or pleasure, are thereby placed in a situation of danger, and the company knows, or with reasonable diligence ought to know, of the danger. It may be, as decided in Buell v. Utica Gas & Elec. Co., 259 N.Y. 443, 182 N.E. 77, upon which defendant strongly relies, that the company's duties may not be extended so far as to require it to take precautions necessitated by an extraordinary, special, and temporary use of the premises; but we have no occasion to pass upon that question at this time. We are not concerned in the pending case with a use of premises so brief and extraordinary that an unreasonable burden would be placed upon the company if it were required to safeguard persons engaged in such an undertaking. The erection and maintenance of the Ferris wheel on its allotted space in the fairground cannot be viewed as an extraordinary, special, or even as a temporary use of the premises, in a proper sense. Its maintenance there was no more temporary than the uses to which the whole fairground was put, and it had been erected in the same location in at least four prior years. An undue risk to patrons and employees was undoubtedly created by erecting the wheel so close to the unguarded wire, but the consequence of that act was to impose upon defendant and the proprietor of the wheel a duty to provide against the danger of which they were aware.

"The remaining questions do not require extended discussion. Much has been written in the decided cases concerning the perils which lurk in deadly currents of electricity and of the degree of care owed by those who control them. For the purposes of this case, it will suffice, however, to state the oft-repeated rule that one who sets in motion so destructive a force is bound to exercise a degree of care commensurate with the danger involved, at places where others have the right to be, for work, business, or pleasure, if injury to such persons is reasonably to be apprehended."

And quite apart from the general duty of safeguarding its wires so that they will not be a source of danger to persons rightfully working in their vicinity, defendant was guilty of negligence in ceasing to de-energize its 33,000 volt wires without no-

tice after leading those working in the vicinity to think that danger from that source had been removed. · Wires carrying such a high voltage of electricity are, of course, a greater source of danger than wires carrying a lower voltage, as high voltage electricity will arc for greater distances than current of lower voltage; and persons working in the neighborhood of wires will exercise greater caution if advised that this highly dangerous current is being carried by them. Having led workmen on the bridge to believe that the high tension wires were being deadened for their safety, the defendant should not have turned on the deadly current again without notifying them that this was being done. As said in A. L. I. Restatement of the Law of Torts, § 325:

"One who gratuitously undertakes with another to do an act or to render services which he should recognize as necessary to the other's bodily safety and thereby leads the other in reasonable reliance upon the performance of such undertaking

"(a) to refrain from himself taking the necessary steps to secure his safety or from securing the then available protective action by third persons, or

"(b) to enter upon a course of conduct which is dangerous unless the undertaking is carried out,

is subject to liability to the other for bodily harm resulting from the actor's failure to exercise reasonable care to carry out his undertaking."

Very much in point on this aspect of the case is Ashby v. Philadelphia Electric Co., supra [328 Pa. 474, 195 A. 889]. In that case the electric company had removed its lines from near where a bridge was being constructed. Before the bridge was completed it moved them back, and a crane being used in the construction of the bridge was brought so near to them that the current arced with fatal results to the operator. In holding the electric company liable the court said:

"In the instant case the electric company knew of the building of the bridge. It had actual and constructive notice of the presence of long-boomed cranes working in the vicinity of its wires. It was shown that the Electric Company's men were at the side of the bridge for some time prior to the time of the accident, engaged in the relocation of a number of gas mains belonging to it. The fact that the Electric Company in March, 1935, moved its wires away from the immediate area of work to a position of safety is some proof that the officers of the company knew that men lawfully engaged in the vicinity of its wires were endangered by them. The fatal error was in moving these wires back before the steel construction work was completed. They were in the instant case sufficient averments and proof of negligence to go to the jury. * * *

"The company having notice that workmen were necessarily engaged for a considerable period at the time and place in question, should have taken the precaution obviously called for, to wit, moved these wires a safe distance away."

▮ And we do not think that the evidence showed contributory negligence or assumption of risk so clearly as to warrant the direction of verdict for defendant. Decedent was working under the direction of his foreman and had a right to assume that he was not being ordered to do something inherently dangerous; it was understood that the high tension wires had been de-energized; and decedent might reasonably have thought that these, as they projected out beyond the lower tension wires, would protect the cable to some extent from coming in contact with the latter; the cable was hanging from three and one-half to five feet away from the high tension wires when the operation was commenced, and there is nothing to show that it came near enough to the lower tension wires to have caused trouble, if the high tension wires had been de-energized. It was the high tension wires that caused the trouble. It is not clear from the evidence how near the cable was brought to them. And in view of the fact that decedent did not know that the current was on them, we think that the question of his contributory negligence was properly left to the jury. It cannot be said from the evidence that the cable was brought into contact with the low tension wires, or that, in the light of the fact that prior contact with the low tension wires had resulted in nothing more serious than the blowing of a fuse, any great danger from proximity to such wires was necessarily to be expected. Ordinarily the existence of contributory negligence is a question for the jury, and verdict can be directed on that ground only when, from all facts and inferences legitimately deducible therefrom, no other rational conclusion can be drawn. State v. Potomac Edison Co., 166 Md. 138, 170 A. 568; Zeihm v. United Electric Light & Power Co., 104 Md. 48,

64 A. 61; Chesapeake & Potomac Tel. Co. v. State, 124 Md. 527, 95 A. 11; Grand Trunk R. Co. of Canada v. Ives, 144 U.S. 408, 429, 12 S.Ct. 679, 36 L.Ed. 485; Gloucester Electric Co. v. Dover, 1 Cir., 153 F. 139. The rule is thus stated by the Court of Appeals of Maryland in Roth v. Highways Commission, 115 Md. 469, 80 A. 1031, 1035: "It is well settled that it is generally for the jury to determine from all the circumstances of the particular case, unless the act relied on to establish it is 'distinct, prominent and decisive, and one about which ordinary minds would not differ in declaring it to be negligent' * * *, and, 'when the nature of the act relied on to show contributory negligence can only be determined by considering all the circumstances attending the transaction, it is within the province of the jury to characterize it.' "

We are not impressed with the argument that the negligence of defendant was not shown to be the proximate cause of decedent's death. "The question of what is the proximate cause of an accident is almost always one of fact for the jury." Ashby v. Philadelphia Electric Co., supra. And a clearer case of negligence being the proximate cause of an injury could not well be imagined than one in which the negligence consists in failure to properly safeguard wires carrying a deadly electric current and this has caused the death of a person who is rightfully in the vicinity and who has come in contact with them without contributory negligence on his part. Of course, if the evidence had conclusively established contributory negligence, verdict should have been directed on that ground; but, as we have seen, this was not the case. Negligence of decedent's foreman is relied upon as an intervening efficient cause, but negligence of the foreman would constitute a ground of defense only if it were the sole cause of the injury. Negligence of the foreman concurring with that of defendant would present an ordinary case of concurring negligence in which the liability of the defendant would not be affected. Prince George's County Com'rs v. Timmons, 150 Md. 511, 133 A. 322; 18 Am.Jur. 449; A. L. I. Restatement of Torts 447. On the facts here appearing, there would be no justification for holding the foreman guilty of negligence as a matter of law, much less for holding such negligence the sole cause of the injury. Nor are we impressed with the argument that the negligence of defendant could not be deemed the proximate cause of the injury because no such action as that which resulted in decedent's death could reasonably have been foreseen by defendant. Work on the bridge was progressing and injury to employees working thereon was reasonably to be anticipated from the proximity of wires carrying such a deadly current of electricity. Smith v. Appalachian Electric Power Co., supra. "If * * * the injury follows as a direct consequence of a negligent act or omission, it cannot be said that the company is not responsible therefor because the particular injury could not have been anticipated." 18 Am.Jur. 449 and cases cited.

We see nothing in the exceptions to the charge. There was, in reality, only one fact question in the case upon which there was room for real contest before the jury. That was the question of contributory negligence; and upon that question the jury were fully and fairly instructed. Complaint is made of other portions of the charge; but the matters complained of, even if erroneous, could not have affected the result and consequently could not justify the granting of a new trial.

The exceptions to the expert testimony are wholly without merit. Dr. Whitehead, professor of electrical engineering at Johns Hopkins University, testified as to the proper method of insulating the low voltage wires and that the only practicable method of insulating the 33,000 volt wires was to put them underground in a conduit. He gave estimates, also, as to cost of insulation. No authority is cited as to why this testimony was not competent, and we know of none. It is said that, as it was the 33,000 volt wires which caused decedent's death, testimony as to insulating the other wires was irrelevant and confusing; but at the time the evidence was offered defendant was not admitting that it was the 33,000 volt wires that caused his death.

For the reasons stated, the judgment appealed from will be affirmed.

Affirmed.