RAYMOND FRERICHS, ADMINISTRATOR OF THE ESTATE OF DAVID M. WIGGINS, DECEASED, APPELLANT, V. EASTERN NEBRASKA PUBLIC POWER DISTRICT, A CORPORATION, ET AL., APPELLEES.

49 N. W. 2d 619

Filed November 6, 1951. No. 33014.

*Cline, Williams, Wright & Johnson,* for appellant.

*Chambers, Holland & Groth, John R. Dudgeon, Lee, Bremers & Lee,* and *Edwin Moran,* for appellees.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, CHAPPELL, WENKE, and BOSLAUGH, JJ.

YEAGER, J.

This is an action by Raymond Frerichs, administrator of the estate of David M. Wiggins, deceased, plaintiff and appellant, against Eastern Nebraska Public Power District, a corporation, defendant and appellee, to recover damages in favor of the widow and children of the deceased on account of the death of the said deceased which plaintiff claims was by the wrongful, unlawful, and negligent acts of this defendant. B-K Construction Company, a corporation, is also a named defendant but against it no liability is asserted in this action. It was made defendant because of the legal obligation it had to the deceased under the Workmen's Compensation Act as employer of the deceased at the time of his death and because of its right of subrogation in case of recovery in this action. Hereinafter plaintiff and appellant will be referred to as plaintiff; the deceased, David M. Wiggins, as the decedent; the Eastern Nebraska Public Power District as defendant; and B-K Construction Company as the company.

The case was tried to a jury which returned a verdict in favor of the defendant on which verdict judgment was entered. A motion for new trial was filed which

was overruled. From the judgment and the order overruling the motion for new trial the plaintiff has appealed.

Numerous errors are assigned as grounds for reversal but before approaching them it appears necessary to set forth and make some observations upon the factual situation as it is disclosed by the record.

On and several years prior to July 2, 1946, the defendant was a public power district which had constructed, owned, and maintained electric power lines and furnished electric current in seven counties in Nebraska including Otoe County. Among them was a line 3,419 feet in length extending generally east and west between what are described in the record as the Catron and the McKee farmsteads both in Section 4, Township 8, Range 9, Otoe County, Nebraska. The Catron farmstead is near the west side and the McKee near the east side of the section. This line was constructed by extension in 1941 from the Catron place to the McKee place to furnish electric current for the latter. The line crossed no roads or public ways. It was constructed by the setting of poles in the ground and the stringing of wires between transformers at the two ends. The line was grounded at both transformers. It was also grounded 1,843 feet west of the ground at the McKee end. There was no other grounding of the line. The line has been described as a 7,200 volt single phase multi-grounded Y-type circuit. It consisted of two wires mounted vertically, that is one was strung in position from pole to pole and the other parallel therewith but on a vertical plane below. The exact distance of separation is not made known but it appears to have been near three feet. The higher wire was attached to insulators on the top of the poles. The lower was attached without insulation to the sides of the poles. The higher carried the current from the source of supply to the point of use. The design of the lower was not to carry current but with grounding was to complete the return circuit. There is no contention

that this lower wire would not have performed in accordance with its design had it been properly and sufficiently grounded.

On July 2, 1946, the company was constructing under contract a gas transmission or pipe line over and across the McKee land. This line was being laid in a channel dug by the company. The line of construction passed under the power line from northeast to southwest at a point about 800 feet west of the east end of the power line. The defendant had no notice of this construction. The decedent was an employee of and was engaged in the services of the company in this construction. At that time, employed in this work of construction, the decedent had a fellow employee whose name is W. J. Reeds. Reeds was the operator of what has been described as a boom tractor. This tractor was heavy equipment and was equipped with a Diesel motor. On its left side attached about one foot from the ground it had a boom or arm about 17 feet in length. This boom could be elevated to a vertical or almost vertical position and it could be lowered by allowing the upper end to be extended outward from the tractor. Extending from a point of attachment on the right side of the tractor up over the end of the boom and down on the left side were metal cables. This equipment was used, among other things, to lift and hold in suspension progressive portions of the pipe for cleaning and painting before finally lowering the pipe into the channel. This was described as cradling pipe.

On the day in question Reeds took the tractor and boom under the power line without incident while he was cradling pipe except that he saw the line, asked a fellow employee if there was clearance, and was assured that there was. Some time later, on request of his superior communicated to him by decedent, he discontinued cradling and came back up the pipe line under the power line. The boom caught and broke the lower wire of the power line. At the time decedent was standing,

leaning on a pick-up truck which was parked probably directly under the power line. As a result of this in a manner not disclosed except by inference the decedent suffered a severe electric shock from which very soon thereafter he died.

The general theory of plaintiff's cause of action is that by reason of illegal construction of the line, and negligent failure to properly ground, the lower wire became charged with a high voltage which was transmitted to the decedent when it was broken thus causing his electrocution and death. The negligence charged is particularized in the petition but it is not deemed necessary to set forth the particulars here.

The defendant by its pleadings denies any illegal or negligent act on its part and says substantially that the decedent came to his death as a direct result of the act of the employee of the company in driving the tractor under the electric line with the boom in such position that it struck and broke the line, the existence of which was well known to him.

At the close of plaintiff's evidence the defendant moved for a dismissal on the ground that there was no evidence of negligence on the part of the defendant. At the close of all the evidence this motion was renewed and joined with it was an alternative motion for directed verdict on the same ground. It becomes necessary therefore to make a determination on this question before entering upon a consideration of plaintiff's assignments of error.

Of course in the consideration of this question all of the competent evidence adduced by plaintiff together with all reasonable inferences to be drawn therefrom favorable to him must be accepted as true. Parish v. County Fire Ins. Co., 139 Neb. 726, 298 N. W. 702.

The plaintiff has inferred from the evidence that the lower wire of the line carried the electric current which caused the death of the decedent. This inference is based on the proved fact that this wire was broken and fell to the ground and proof of improper and insufficient

grounding by departure from what he contended was proper, safe, and lawful construction and grounding. There was no evidence of test of the wire with respect to current either before or after it was broken and no proof that either the decedent or the truck on which he was leaning was touched by the wire.

Without, however, accepting or rejecting the inference as reasonable it will for present purposes be assumed that the broken wire carried the electric charge which caused the death. So assuming, does it follow under law that the defendant may be held accountable for the death? The defendant contends that it may not.

The theory of the defendant is that the power line was an existing condition over which the defendant had no control and was in nowise a proximate cause, that the proximate cause was the driving of the tractor under the long existing, observable, and observed condition.

It may be reasonably said that the plaintiff does not contend herein that danger flowed from the wire to the decedent without the contact which was made therewith by the employee of the company.

The rule with reference to cause which will afford the basis for an action for damages for negligence is that the act must be a proximate cause of the accident and the ensuing injuries or death. Brotherton v. Manhattan Beach Improvement Co., 48 Neb. 563, 67 N. W. 479, 58 Am. S. R. 709, 33 L. R. A. 598; Wagner v. Watson Bros. Transfer Co., 128 Neb. 535, 259 N. W. 373; Anderson v. Byrd, 133 Neb. 483, 275 N. W. 825.

In distinguishing between proximate cause and condition this court said in Steenbock v. Omaha Country Club, 110 Neb. 794, 195 N. W. 117:

"To constitute proximate cause, under authority of the adjudicated cases, the injury must be the natural and probable result of the negligence, and be of such a character as an ordinarily prudent person could have known, or would or ought to have foreseen might probably occur as the result. It is not sufficient that the

negligence charged does nothing more than furnish a condition by which the injury is made possible, and if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. There may have been carelessness and negligence on the part of the country club in placing the flagpole across its driveway, but this, in itself, no matter how careless and negligent it might be, would not and could not alone cause the injury."

The observations made in this statement are supported by other authority cited and quoted from in the opinion. Numerous other authorities sustain this viewpoint. Bunten v. Eastern Minnesota Power Co., 178 Minn. 604, 228 N. W. 332; American General Ins. Co. v. Southwestern Gas & Electric Co., 115 F. 2d 706; Reardon v. Florida West Coast Power Corp., 97 Fla. 314, 120 So. 842; Webb v. Louisiana Power & Light Co. (La.), 199 So. 451; Oklahoma Gas & Electric Co. v. Wilson, 172 Okl. 540, 45 P. 2d 750; Hayden v. Paramount Productions, Inc., 33 Cal. App. 2d 287, 91 P. 2d 231; Buell v. Utica Gas & Electric Co., 259 N. Y. 443, 182 N. E. 77; Watral's Adm'r. v. Appalachian Power Co., 273 Ky. 25, 115 S. W. 2d 372; Keep v. Otter Tail Power Co., 201 Minn. 475, 277 N. W. 213; Morton's Adm'r. v. Kentucky-Tennessee Light & Power Co., 282 Ky. 174, 138 S. W. 2d 345; Wyatt v. Chesapeake & Potomac Telephone Co., 158 Va. 470, 163 S. E. 370, 82 A. L. R. 386.

For the purposes of analysis and application of this rule to the case at bar it has, for present purposes, been assumed that there was negligence in the construction of this line in the respects hereinbefore indicated. Under the rule this in and of itself furnishes no basis for a claim of proximate cause since it may not reasonably be said that the occurrence here considered could be regarded as the natural and probable result of this negligence or that this occurrence was of such a character as an ordinarily prudent person could have known, or

would or ought to have foreseen might probably occur as the result. Under the rule if the negligent act creates a condition from which injury flows only by a subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not a proximate cause of the injury.

Here was a condition which had existed for several years. The line was over a field and not over any public way. The height of this line at the point of the break was estimated to be from 15 to 17 feet. There is no information that any farming operation could be calculated to extend that distance above the ground. It cannot well be said under this evidence that the defendant, measuring its duty by what an ordinarily prudent person could or would know or ought to foresee should have anticipated the occurrence which has been described herein.

If therefore the rule as announced in Steenbock v. Omaha Country Club, *supra,* is to be adhered to it must be said that the record in this case fails to disclose any act on the part of the defendant which was a proximate cause of the death of the decedent.

The plaintiff seeks to distinguish this case in principle from that case and to point out that it does not come within the rule there laid down as to proximate cause. By factual comparison this case is at least as clearly, if not more so, one where it must be said that the act producing the result could not have been one known or foreseen by an ordinarily prudent person.

In Steenbock v. Omaha Country Club, *supra,* a flagpole was placed across a driveway customarily used by the members of the club. The chauffeur of a member drove over the pole in consequence of which Steenbock was injured. It could be reasonably anticipated or foreseen there that contact might be had with the pole. This court held that the placing of the pole was only a condition and not a proximate cause. Here the electric line was suspended well up above the ground entirely across

farm lands where only farming operations could be anticipated. It cannot well be said that the defendant acting as an ordinarily prudent person could have foreseen such an occurrence as this.

Plaintiff cites numerous authorities to sustain his position. None of them however depart from the proposition that if the act producing the result complained of is the independent act of a third person that act must be regarded as the proximate cause. Also for the most part the pronouncements upon which reliance rests are not based upon legal and factual situations comparable to that involved in the case at bar.

In Harrison v. Kansas City Electric Light Co., 195 Mo. 606, 93 S. W. 951, 7 L. R. A. N. S. 293, death by electrocution was involved and improper grounding was charged as negligence. In that case the contact was direct and there was not any element of independent intervening cause.

The case of City of Altus v. Wise, 193 Okl. 288, 143 P. 2d 128, was one where a barbed wire on a high school ground became charged with current. Contact with this wire caused death. No independent act of a third person was involved.

Brunell v. Mountain States Power Co., 81 F. 2d 305, was a case where the power company had constructed a power line along a public way. A pole was struck by an automobile out of control causing a dislocation of wires as a result of which plaintiff was injured. It was held that it was a question of fact for a jury as to whether or not this was a probable occurrence which the company should have anticipated. The opinion says inferentially that the duty of protection to the public extends only to situations where danger is reasonably to be anticipated.

Hickman v. Union Electric Light & Power Co. (Mo.), 226 S. W. 570, is in some aspects similar to the one at bar. In this case an elevated arm of sewer building machinery came in contact with an electric wire. The wire

was over a public street and was insulated from the beginning. The insulation had become defective in consequence of which on contact therewith death of a man engaged in the sewer construction ensued. The opinion points out that the use was public and it was the duty of the company in this use to so operate as not to interfere with the right of the public to use the remainder, in the particular instance, to keep its wire properly insulated. Also it is pointed out that the company was charged with notice of the sewer construction and that it was thereby charged with a duty to guard against danger from its wire.

Fassi v. Schuler, 349 Mo. 160, 159 S. W. 2d 774, is a case growing out of a fire in a three-story apartment or rooming house. The claim was that the house was not equipped as legally required with a fire escape. The court held that a jury could properly find that injury to the complaining occupant was the natural and probable consequence of the failure to have provided a fire escape.

McGinnis v. Delaware, L. & W. R. R. Co., 98 N. J. L. 160, 119 A. 163, is another case of an electric line over a public way. On this public way a gas main was being constructed. It was held that there was a jury question as to whether or not the company took the necessary precautions under the circumstances.

The case of Futrell v. Arkansas-Missouri Power Corp., 104 F. 2d 752, was a case where a clothesline became charged from a power line. Negligence was held to be a question for the jury.

Conowingo Power Co. v. State of Maryland, 120 F. 2d 870, was a case where a high tension wire came into contact with a cable on bridge construction equipment. The work in bridge construction was known to the power company. Prior to the incident causing death it took precautions to protect those engaged in the construction but had at the time abandoned all or part of the precautions.

Other cases are cited in the brief but none of them appear to furnish any more light upon the subject under inquiry than those herein referred to.

From a study of these cases, and with good reason it is thought, certain conclusions are to be arrived at as follows: Electricity is an unseen, powerful, and dangerous force. In the construction and maintenance of lines for its transmission the degree of care required is that which will protect against known and foreseen dangers and such as in the light of the agency itself and its known propensities may reasonably or in probability be foreseen or anticipated taking into consideration at all times the time, place, and conditions of such construction and maintenance.

On the facts of this case the defendant cannot be said to have known, reasonably anticipated, or foreseen in the absence of notice that any such operation as was carried on in this field would in probability ever come about. It had no notice. The inescapable conclusion therefore is that the decedent came to his death as the result of an independent act of the employee of the company and that within the meaning of law no act of the defendant may be regarded as a proximate cause thereof. No cause of action was proved against the defendant. The assignments of error therefore require no consideration herein.

This being true no verdict or judgment other than the one rendered would have been proper.

The judgment of the district court is affirmed.

AFFIRMED.