BALDWIN, *Appellant*, v. CITY OF SPRINGFIELD.

Division One, November 3, 1897.

1. **Damages**: CAUSE OF ACTION: REASONABLE INFERENCE.  In a suit against a city for damages because of injuries to plaintiff caused by his falling into an excavation, which it is alleged was negligently left open, the plaintiff is entitled to every fair and reasonable inference from all the evidence that has been produced when it is denied that he has a sufficient cause of action to go to the jury.

2. ———— : DEDICATION OF STREET: LIABILITY OF CITY.  The mere dedication of a street to public use by means of a recorded plat, does not alone render the city liable for negligent failure to keep the street in repair.  It is necessary to show further that the street has been accepted and its use as such invited or sanctioned by the city, and such invitation or sanction may be given by the acts of its proper officers as well as by ordinance.  The facts in this case reviewed, and the conclusion reached that the evidence tended to prove that the city had accepted the street.

*Appeal from Greene Circuit Court.*—HON. JAMES T. NEVILLE, Judge.

REVERSED AND REMANDED.

*Peter Helton* and *Lincoln & Lydy* for appellant.

(1)  The following three cases determine the main questions involved and fix the liability of defendant in this case.  *Bassett v. St. Joseph*, 53 Mo. 290; *Buesching v. Gaslight Co.*, 73 Mo. 219; *Wiggin v. St. Louis*, 135 Mo. 558. (2) Pedestrians have the right to walk along and across streets at any point they may see fit. *Henry v. Railroad*, 113 Mo. 525.  And it is the duty of the city to keep the whole of its sidewalks in repair. *Franke v. St Louis*, 110 Mo. 516; *Roe v. City of Kansas*, 100 Mo. 190 (overruling *Tritz v. City*, 84 Mo. 632). (3) It is the duty of the city to keep its streets and sidewalks in a reasonably safe condition for persons traveling thereon, and it is liable to one injured

by reason of its negligence in this regard, even though the unsafe condition is brought about by persons other than agents of the city, if it had notice, and in the case at bar the city did have actual notice. *Carrington v. St. Louis*, 89 Mo. 208; *Russell v. Columbia*, 74 Mo. 480; *Franke v. St. Louis*, 110 Mo. 516. (4) The evidence fully established Jefferson street at the point where the injury occurred as a public street in said city. *Meiners v. St. Louis*, 130 Mo. 275; *Golden v. City of Clinton*, 54 Mo. App. 112. (5) But the city would in any event be liable for permitting an unguarded excavation at the side of Commercial street even if such excavation were on private property. *Bassett v. St. Joseph*, 53 Mo. 298; *Halpin v. City of Kansas*, 76 Mo. 335; *Wiggin v. City of St. Louis*, 135 Mo. 558; *Kiley v. City of Kansas*, 69 Mo. 108; *Kiley v. City of Kansas*, 87 Mo. 107.

*Len Walker* and *V. O. Coltrane* for respondent.

(1) Streets and parts of streets which are unnecessary for the convenience of public travel need not be opened, and until opened there is no liability on the part of the city for failing to keep such street in a reasonably safe condition for travel. *Bassett v. St. Joseph*, 53 Mo. 303; *Craig v. Sedalia*, 63 Mo. 419; *Moore v. Cape Girardeau*, 103 Mo. 470; *Walker v. City of Kansas*, 99 Mo. 652; *Taubman v. Lexington*, 25 Mo. App. 218. (2) In order to make a city liable for injuries for suffering a street to remain defective there must be an acceptance, express or implied, of the grant or dedication. 2 Dill. Mun. Corp. [4 Ed.], sec. 642; *Golden v. Clinton*, 54 Mo. App. 111; *Moore v. Cape Girardeau*, 103 Mo. 470. (3) The excavation complained of in the case at bar is not a nuisance created by the city, or its agents, nor is it maintained on corporate property. The city can not be held liable in

damages for a failure to abate a nuisance existing on private property and not created by its agents. *Kiley v. City of Kansas,* 87 Mo. 103; *Armstrong v. City,* 79 Mo. 319; *Davis v. Montgomery,* 51 Ala. 139; *Levy v. City of New York,* 1 Sandf. (N. Y.) 465. (4) A corporation is to be held responsible for the condition of the highway, not for that of the adjoining land, and when the traveler voluntarily leaves the highway, and thereby sustains an injury, he has no action against the town. Nor are towns bound to erect barriers merely to prevent travelers from straying from the highway and from falling into a pit which they may reach by straying. Beach on Contrib. Neg., sec. 79; 2 Dill. Mun. Corp. [4 Ed.], sec. 1005; *McHugh v. St. Paul,* 70 N. W. Rep. (Minn.) 5; *Bassett v. St. Joseph,* 53 Mo. 290; *Sparhawk v. Salem,* 1 Allen, 30.

BARCLAY, P. J.—This action is for $3,000 as damages said to have been sustained by plaintiff in consequence of a fall into an excavation in the city of Springfield, Missouri. His claim is that the excavation was in a city street. The defendant denies that claim, and also asserts contributory negligence of the plaintiff in getting into the excavation. At the trial on the circuit, the plaintiff was forced to a nonsuit on account of a ruling (in the form of an instruction) that under the law and evidence he could not recover. To the giving of the instruction plaintiff excepted. After the usual motion and other steps in the trial court, he brought the case to the Supreme Court by appeal.

Plaintiff's testimony tends to prove the following facts:

The accident occurred about 9 o'clock P. M., March 28, 1895. Plaintiff had been talking with someone in a store on the northeast corner of Jefferson and Commercial streets in Springfield. When he came out

of the store he walked west a few steps and then turned
north into Jefferson street, as he supposed, but in fact
he walked into an unguarded opening leading to a cel-
lar or basement beneath the store he had just left.
The night was dark.  The electric lights, which had
formerly been used to illuminate the streets in that
vicinity, were not lit on that night.  There were lights
in some of the neighboring stores, but according to
plaintiff's account, there was not light enough to reveal
the opening into which he walked.  In consequence of
stepping unexpectedly into it, he fell, broke his ankle,
and suffered the damages which form the subject of
his present claim.  Plat "A," which accompanies this

PLAT A.

Baldwin v. City of Springfield.

PLAT B.

opinion, shows the relative positions of Commercial and Jefferson streets. The plat marked "B" indicates the main features of the very place of the accident. The area into which plaintiff fell is about seven feet deep, six feet wide and ninety feet long (north and south.) On the west side (toward Jefferson street) the area is surmounted by a guardrail of iron, extending along the line "R-R," at a sufficient height to afford a barrier to warn persons approaching from the west. But on the south side (toward Commercial street) the area is open at the top where a flight of steps leads to the basement under the Wahl building.

The Wahl building line on the south is about two feet back of the original north line of the sidewalk of Commercial street. But the intervening space is open and used by the public as a sidewalk, from the street to the building line. The south line of the base-

ment area coincides with an extension of said building line. If the sidewalk of Commercial street, at the northeast corner of that street and Jefferson, were extended northward along the latter street, with the usual width of ten feet, the basement area would fall within the space properly belonging to the sidewalk. Along the east side of Jefferson street there is, however, no finished sidewalk; but a cinder path or walk used by pedestrians extends northward to the railroad property. This cinder walk runs along Jefferson street, just west of the railing on the west of the basement area, from a point where the sidewalk of commercial street stops on the northeast corner of that street and Jefferson.

The streets mentioned and other highways in the vicinity are all represented on a duly recorded plat, introduced in evidence, which purports to dedicate the same to public use. It is dated in 1869. Commercial street is an important street at this point. There is a business building on each of the four corners where it and Jefferson intersect. Jefferson street runs from the southern to the northern city limits. But counsel for defendant insist that the city has not accepted the part between Commercial and Chase streets in such a manner as to render the city liable for neglect to keep that part of the street in repair for travel. It is conceded that south of Commercial street and north of Chase street Jefferson street is a city highway, and that those portions of it are fully recognized by the city as a street.

Plaintiff did not fall into the area while passing along Commercial street. He admits that he turned the corner to go north on Jefferson to the railway property, where he expected to meet a friend.

As to the sort of user to which the part of Jefferson street in question has been subjected, the main facts

disclosed were these: ''It looked like it is a street that has been traveled.'' Teams ''stand in there and wait for jobs.'' There is travel up and down the street as far as it goes. There is no street crossing over the railroad at Jefferson street, but there is travel on foot north on that street on the cinder sidewalk, though not as much as on Commercial street. Persons have been noticed passing along Jefferson street near the place of the accident ''every little while, both ways.'' The street crossing on Jefferson street at the north side of Commercial is paved and finished as far north at least as the north line of the sidewalk of Commercial street. The express and mail wagons occasionally go to the depot over that part of Jefferson street, and freight for the stores in block 38 comes to them by the same route. There is considerable travel on the cinder walk, mostly by railroad men. There was formerly a board walk where the cinder walk now is.

One street commissioner, between 1892 and 1894, filled up a mud hole in that part of Jefferson street; and another one had the scraper used thereon to remove the dirt from each side of the street and to put it in the center. The witness, who stated the fact last mentioned, added in reply to a question as to the travel on this portion of Jefferson street: ''There is considerable travel on it at times. I was working in the Mercantile building there for six months, that is some time ago, and there is considerable travel from there down to the depot. I have seen hacks go there, and I have seen the mail go there, and express wagons and so on. There are not many people who walk there, simply because it is not a very good road. Some people go right across and go down across Jefferson north when the cars are not in the way; I have myself many times. There is a regular way to the depot down that way.'' The city council had given, at one time, permission to put in a sewer

along this part of Jefferson street for the benefit of some of the owners of adjacent stores on Commercial street.

We do not consider it necessary to go further into the particulars of the testimony.

1. In the inquiry whether plaintiff has a case to go to the jury he is entitled to every fair and reasonable inference from the evidence he has produced, as well as to the full benefit of all the positive facts he has elicited.

2. A city, having been provided with adequate means to keep its streets in repair, is liable for any want of reasonable care in discharging that duty, if, in consequence of such neglect, anyone in the exercise of due care sustains injury.

3. The mere dedication of a city street to public use by means of a recorded plat does not of itself render the municipality liable for negligent failure to keep the street in repair.    It is necessary further to show that the street in question has been accepted before that liability begins.    Even an acceptance of a dedication transferring title to the street in trust for the public, does not impose a liability to keep the dedicated land in repair as a street.    The latter obligation does not attach until the corporation, in some official and appropriate manner, has invited or sanctioned its use as a street by the public.    But such sanction may be given by acts of its proper officers as well as by acts in the form of ordinances.    To the extent to which the city has sanctioned the use of such land by the public as a thoroughfare may the city justly be held liable for ordinary care to maintain the thoroughfare in reasonable repair for such use.    *Rex v. Leake* (1833) 5 B. & Ad. 469; *Kennedy v. LeVan* (1877) 23 Minn. 513; *Green v. Elliott* (1882) 86 Ind. 53; *Hartford v. R. R.* (1890) 59 Conn. 250 (22 Atl. Rep. 37); *Meiners v. St. Louis*

(1895) 130 Mo. 274 (32 S. W. Rep. 637); *Brennan v. St. Louis* (1887) 92 Mo. 482 (2 S. W. Rep. 481).

The acts of the street commissioners on the portion of Jefferson street in question, the long continued use by pedestrians of the cinder walk (and the board walk, which preceded it in point of time) along the east side of Jefferson street, together with many of the other facts already recited, we regard as affording evidence fairly tending to prove that the city had accepted that part of the street as one of its thoroughfares and had sanctioned such a use, at least, as plaintiff was endeavoring to make of it, namely, its use as a passage way to the railway property on the north. The open area, giving access to the basement, was so close to the cinder walk as to warrant an inference of a negligent condition of the highway there, if it were found that the city was responsible for the care of Jefferson street as a public thoroughfare at that point, as a matter of fact.

4. The issue of plaintiff's own exercise of care in the circumstances we hold is one for the jury.

5. As the case should be tried again, we forbear any extended comment on the weight of the testimony submitted by plaintiff.

In our opinion the learned trial court was in error in giving the instruction for a nonsuit. The judgment is reversed and the cause remanded. MACFARLANE, ROBINSON and BRACE, JJ., concur.