LAURA J. BLUNK, Appellant, v. SAM H. SNIDER.—111 S. W. (2d) 163.

Division Two, December 17, 1937.

*Cooper, Neel, Kemp & Sutherland* for appellant.

*Paul C. Sprinkle* and *Sprinkle & Knowles* for respondent.

28

WESTHUES, C.—Laura J. Blunk, the appellant, filed suit in the Circuit Court of Jackson County, against the respondent, to recover $20,000 in damages for personal injuries sustained by her on April 8, 1933, when she was struck by respondent's car. A trial resulted in a verdict for the defendant and plaintiff appealed.

The collision occurred near the south line of the intersection of Thirty-first and Main streets in Kansas City, Missouri. The defendant was driving his car north on Main Street, and plaintiff was walking across this street from east to west. When plaintiff reached the northbound car tracks she was struck by the car and sustained, among other injuries, a broken leg and wrist.

Te case was submitted to the jury on primary negligence and also the humanitarian doctrine. Plaintiff introduced evidence that the stop, or red lights, at the time of the collision, were against north and southbound traffic. The defendant introduced substantial evidence to the contrary, that is, that the red lights were against east and westbound traffic. This made a submissible case on primary negligence. On the humanitarian theory of the case plaintiff introduced evidence that she was hurrying across the street looking west; that when she reached a point near the center of the northbound car tracks she was struck by the defendant's car; that defendant could have seen her in time to have averted the injury. The evidence showed, beyond doubt, that the defendant was driving his car at a speed of not more than twelve or fifteen miles per hour, and that it could have been stopped within a distance of about ten or fifteen feet. The defendant did stop his car within ten feet or less after the collision. Defendant testified that as he approached the intersection he noticed a number of people in and about the safety zone; that he sounded his horn and some of the people, who were attempting to cross the street, stopped. Defendant further

stated he did not see plaintiff until he was within a few feet of her; that she was north of the safety zone and north of the other people. Defendant was driving north with the right wheels of his car between the rails of the northbound street car track. It was defendant's theory that plaintiff suddenly stepped into the path of his car and that it was impossible for him to have discovered plaintiff in a position of peril in time to have averted striking her. The above is a sufficient statement of the facts, since the only questions briefed pertain to the correctness of two instructions given at defendant's request—the admissibility of certain evidence and the qualification of one of the jurors.

▆ Appellant asserts in her brief that the court erred in giving, at defendant's request, Instruction (G). This instruction in substance informed the jury that if defendant did not see, and by the exercise of the highest degree of care could not have seen the plaintiff, and could not, with safety to himself and others, have stopped or swerved his car, or given warning and thereby avoided the collision, then the defendant could not be charged with negligence under the humanitarian doctrine. Appellant in her brief asserts that the instruction hypothesized two separate and distinct facts, connected only by the conjunction "and," neither of which facts was supported by the evidence. Appellant also asserts that the instruction was a misstatement of the converse of the humanitarian rule, was a roving commission to the jury and was confusing and misleading. Plaintiff's instruction authorized a verdict for plaintiff if defendant saw, or, by the exercise of the highest degree of care, could have seen plaintiff in a position of peril, or coming into a position of peril, in time thereafter, by the exercise of the highest degree of care, with safety to himself, to have avoided striking plaintiff by stopping or swerving his car, or sounding the horn. It is evident that Instruction (G) was the converse of plaintiff's instruction, except that the instruction did not use the phrase "in time thereafter." While that exact phrase need not be used, an instruction of this nature should not be so worded as to exclude that element. It was very material in this case as to when the peril arose and when the defendant, under the humanitarian doctrine, should have discovered the peril. If the defendant could have discovered plaintiff in peril in time thereafter to have averted the injury, with safety to himself and others, then the defendant was bound to do so. Appellant further asserts that the defendant admitted he saw plaintiff when she was about five feet from his car; that there was no evidence that he could not have seen her long before that time. Defendant did say he saw plaintiff when she was a few feet from his car, but it could be reasonably inferred that it was too late then to stop the car in time to avert the collision. Defendant stated that a

street car was upon the southbound track so that he could not swerve to the west. It was, therefore, a question for the jury to decide. Defendant testified that there was "quite a crowd of people" in the safety zone and that plaintiff was struck north of the zone. We need not decide whether this was sufficient evidence to justify an inference that defendant could not have seen plaintiff in time to have avoided the injury. The burden of proof was upon plaintiff to affirmatively show that the defendant saw, or could have seen plaintiff. A jury could have found this issue for the defendant because of a lack of evidence, or because the jury did not believe plaintiff's evidence.

Appellant complained of Instruction (D), which reads as follows:

"The charge laid by plaintiff against the defendant is one of negligence. Negligence is a positive wrong, and therefore in this case is not presumed. In other words, a recovery may be had on a charge of negligence only when such charge is sustained by the preponderance; that is, the greater weight of the credible evidence to the reasonable satisfaction of the jury that the charge is true as laid, and it does not devolve upon the defendant to disprove the charge, but, rather, the law casts the burden of proof in respect of it upon the plaintiff, and such charge of negligence must be sustained by the preponderance; that is, the greater weight of the credible evidence to the satisfaction of the jury, as above stated. If, therefore, you find the evidence touching the charge of negligence against the defendant to be evenly balanced, after fairly considering the evidence, your verdict must be for the defendant."

Appellant contends that this instruction casts upon plaintiff a greater burden than the law requires in a civil case. To this we agree, and plaintiff is entitled to a new trial. The instruction is well written, but it is based upon a false premise. At the outset it informs the jury that the defendant stands charged, by plaintiff's petition, with negligence; that negligence is a *positive wrong*. Negligence is not a positive wrong. A positive wrong is a wrongful act, willfully committed. Negligence in a case of this nature is the failure to exercise the highest degree of care, a mere act of inattention or inadvertence. In order to commit a positive wrong there must be an intent. Intent is not an element of negligence. In 45 Corpus Juris, 635, section 11, we find the following:

"Intent is not an element of negligence, but on the contrary, the absence of an intent to inflict the injury of which complaint is made is an element which distinguishes negligence from other torts, for where an intention to inflict the injury exists, whether that intention be actual or constructive only, the wrongful act is not negligent but is one of violence or aggression or fraud."

Again, in 45 Corpus Juris, 672, the following appears:

"Accurately speaking, the terms 'negligence' and 'willfulness' are incompatible, and signify the opposites of each other, in that absence of intent is a distinguishing characteristic of negligence whereas willfulness cannot exist without purpose or design, and a willful injury will not be inferred when the result may be reasonably attributed to negligence or inattention. The phrase 'willful negligence' is a contradiction in terms, for to say an injury resulted from the negligent and willful conduct of another is to affirm that the same. act is the result of two opposite mental conditions, heedlessness and purpose or design."

In Thayer v. Denver & R. G. Railroad Co. (N. M.), 154 Pac. 691, the court held that negligence, whether slight, ordinary, or gross, was still negligence and negative in its nature, implying the omission of duty and excluding the idea of willfulness. Cases from many jurisdictions were there discussed and cited in support of that holding. The Federal Circuit Court of Appeals, Seventh Circuit, in Cleveland, C., & St. L. Ry. Co. v. Tartt, 12 C. C. A. 618, 64 Fed. 823, 1. c. 826, had the following to say:

"Negligence is negative in its nature, implying the omission of duty, and excludes the idea of willfulness. Willful or intentional injury implies *positive and agressive conduct,* and not the mere negligent omission of duty. The charge of negligence does not, *ex vi termini,* import any actual or implied intention to do harm. [Railroad Co. v. Huffman, 28 Ind. 287; Railroad Co. v. Graham, 95 Ind. 286: Ivens v. Railway Co., 103 Ind. 27, 2 N. E. 134; Railway Co. v. Schmidt, 106 Ind. 73, 5 N. E. 684.] 'To say that an injury resulted from the negligent and willful conduct of another is to affirm that the same act is the result of two exactly opposite mental conditions. It is to affirm in one breath that an act was done through inattention, thoughtlessly, heedlessly, and at the same time purposely and by design.' [Railway Co. v. Bryan, 107 Ind. 51, 7 N. E. 807; Beach, Contrib. Neg. 67, 68; Palmer v. Railroad Co., 112 Ind. 250, 14 N. E. 70.]'" (Italics ours.)

We ruled in Nelson v. Evans, 388 Mo. 991, 93 S. W. (2d) 691, 1. c. 694, 695 (5), that negligence was not ordinarily a positive wrong. The instruction under consideration, after thus informing the jury that defendant was charged with negligence and that negligence was a positive wrong, which means an intentional wrong, continues by telling the jury that plaintiff can recover *only when such charge of negligence* has been proven by a preponderance, that is the greater weight of the evidence to the reasonable satisfaction of the jury. The instruction certainly casts upon plaintiff a greater burden than is required in an action based on negligence. Division One of this court in Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S. W. (2d)

58, l. c. 63 (11) (12), condemned a plaintiff's instruction which informed the jury that plaintiff was entitled to a verdict if "the evidence in this case preponderates in plaintiff's favor, although but slightly." The court there said:

"Instructions on burden of proof should not state too many technical rules and, if an attempt is made to go into degrees of preponderance of evidence, it is almost certain to get the matter so complicated that a jury of laymen will have no idea at all as to what is meant."

The court there also advised that an instruction containing a plain declaration as to the burden of proof was all that ought to have been given. If the instruction in the above case was erroneous then no logical argument can be advanced in defense of the instruction under consideration. Authorities discussing instructions on the burden of proof may be gathered from the following recent cases: Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S. W. (2d) 58, l. c. 63 (11) (12); Timper v. Mo. Pac. Railroad Co., 98 S. W. (2d) 548, l. c. 549 (1, 2); Aly v. Terminal Railroad Assn., of St. Louis, 336 Mo. 340, 78 S. W. (2d) 851; Nelson v. Evans, 338 Mo. 991, 93 S. W. (2d) 691, l. c. 694, 695; Koebel v. Tierman Coal & Material Co., 337 Mo. 561, 85 S. W. (2d) 519, l. c. 523 (2); Doherty v. St. Louis Butter Co., 339 Mo. 996, 98 S. W. (2d) 742, l. c. 744 (2).

In 64 Corpus Juris, 721, section 632, we note the following:

"The court in charging in a civil case should not require a greater degree of proof than the ordinary preponderance of evidence, and any instruction in a civil case which is calculated to impress on the jury that more than a preponderance of the evidence is necessary to establish a fact is erroneous."

Those interested in this subject may also read the cases cited in 23 Corpus Juris, 12, section 1745.

■ Appellant next complains of the ruling of the trial court in not permitting her to show that the defendant did not pay hospital and doctor bills incurred by reason of her injuries. Plaintiff did not sue to recover for any such expenses, and therefore was not entitled to prove the amount due or paid. However, plaintiff contends that she should have been permitted to show that the defendant did not pay these bills because the evidence of the defendant led the jury to believe that the defendant did pay them. This contention of appellant is not entirely groundless. In reading the record we were of the opinion that the defendant, a doctor, obtained the services of a fellow doctor to care for plaintiff, and that this doctor either performed the services for the defendant *gratis* or was paid by the defendant. On another trial, if a like situation arises, plaintiff in justice should be permitted to show that the defendant had not obligated himself to pay these bills. The amount of these

bills is immaterial unless plaintiff amends her petition and seeks a recovery therefor. The controversy over the qualification of the juror need not be considered since we have awarded plaintiff a new trial.

The judgment is reversed and the caused remanded. *Cooley* and *Bohling, CC.,* concur.

PER CURIAM.—The foregoing opinion by WESTHUES, C., is adopted as the opinion of the court. All the judges concur.