AMY DOWELL v. CITY OF HANNIBAL, Appellant.—No. 40376.—210 S. W. (2d) 4.

Division One, February 9, 1948.

Motion for Rehearing Overruled and Opinion Modified, March 8, 1948.

Motion to Transfer to Banc on Modified Opinion Overruled, April 12, 1948.

526

*Ben Ely*, City Attorney for appellant; *Fuller, Fuller & Ely* and *Nolen & Nolen* of counsel.

*Rendlen, White & Rendlen* and *W. W. Barnes* for respondent.

BRADLEY, C.—Plaintiff brought suit against the city of Hannibal in the Hannibal Court of Common Pleas to recover $10,000 for the alleged wrongful death of her husband. The venue was changed to Monroe County where verdict and judgment went for plaintiff in the sum of $5,000. Motion for new trial was overruled and defendant appealed to the St. Louis Court of Appeals. That court affirmed the judgment, but certified the cause to the supreme court on the dissent of one of the judges (Judge Anderson). See Dowell v. City of Hannibal (Mo. App.), 200 S. W. (2d) 546.

Error is assigned on the refusal of defendant's motion for a directed verdict at the close of the case and on plaintiff's instructions 1, 3, 5, 6 and 8.

Plaintiff's husband, George F. Dowell, was 68 years old at the time of the accident (August 7, 1944) resulting in his death. He and his wife operated a grocery store in Hannibal and deceased, on the day of the accident was, with his truck, delivering groceries, and was accompanied by his wife's nephew, Richard Chaney, a boy about 15 years of age, who was a witness and who testified as to what occurred when deceased was fatally injured. Buchanan Street, about 25 feet in width, is one block in length; extends from Walnut Street on the west to Union Street on the east. Union, a north and south street, is about 30 feet in [5] width, except along by the barrier mentioned infra. There is a 10 percent downgrade on Buchanan as it approaches Union from the west. Union Street is downgrade north of Buchanan, but is practically level south of Buchanan. The area immediately east and south of the place where Buchanan Street enters Union is several feet lower than the street level, and the city had erected a

barrier on the east side of Union opposite Buchanan to protect vehicle traffic coming down the 10 percent grade on Buchanan from the west. This barrier, at the north end, extends about 18 inches and at the south end about 2 or 3 feet beyond the traveled portion of Buchanan and extends about 5 feet out into Union. So that Union, the north and south street, is only about 25 feet in width along by the barrier.

As deceased drove east on the 10 percent downgrade in Buchanan Street, and about midway of the block, or about 100 or 150 feet west of Union, he sought to use his foot brake, but the brake did not work. The brake had been recently checked. Deceased then put his hand on the emergency brake and jerked it, but the truck did not slow down. The emergency brake, however, was found to be in good condition after the accident. Deceased intended to turn north on Union, but when he failed to slow down the truck he swung to the north side of Buchanan and endeavored to turn south on Union. The speed of the truck when it entered Union was about 15 miles per hour. Deceased did not succeed in turning the truck south on Union, but at a speed of about 20 miles per hour and at a point about 15 or 20 feet south of Buchanan, went over the east side of Union and down the steep incline until the truck struck a tree about 14 feet east of Union. Deceased received his fatal injuries when the truck struck the tree. There were dwelling houses on the east side of Union and steps led down to the front yards of these houses.

The negligence relied on by plaintiff was the failure of the city to erect a barrier extending south from the south end of the erected barrier and covering the point where the truck went over the east side of Union Street. Defendant, in its answer, alleged that prior to the accident it had erected the barrier along the east side of Union Street opposite Buchanan and entirely across the dead end of Buchanan; that said barrier was composed of concrete posts and railroad irons and was in all things sufficient to protect persons traveling upon said streets from going over the embankment at the dead end of Buchanan. Defendant denied that it was its duty to extend the barrier any farther south and denied that it was liable for the death of plaintiff's husband.

Defendant bases its contention that its motion for a directed verdict should have been given on two grounds, namely, that it had no duty to extend the barrier south as plaintiff contends, and that absence of a barrier at the point where deceased went over was not the proximate cause of his death. Defendant suggests that had a barrier been at said point impact with the barrier could have been as fatal as the impact with the tree.

It was the duty of defendant to exercise ordinary care to maintain its streets in a reasonably safe condition. Taylor v. Kansas City, 342 Mo. 109, 112 S. W. (2d) 562; Glasgow v. City of St. Joseph, 353

Mo., 740, 184 S. W. (2d) 412. However, defendant is not required to keep its streets in such absolute safe condition as to preclude the possibility of accident and defendant is not an insurer of the safety of travelers on its streets under all circumstances. Taylor v. Kansas City, supra. And defendant has no duty to anticipate and guard against unusual and extraordinary occurrences. Such is the general rule in negligence cases. Mann v. Pulliam et al., 344 Mo. 543, 127 S. W. (2d) 426; Ward v. Ely-Walker Dry Goods Bldg. Co. et al., 248 Mo. 348, 154 S. W. 478, 45 L. R. A. (N. S.) 550; Wecker v. Grafeman-McIntosh Ice Cream Co. et al., 326 Mo. 451, 31 S. W. (2d) 974; American Brewing Assn. v. Talbot et al., 141 Mo. 674, 42 S. W. 679, 64 Am. St. Rep. 538.

Sec. 1817, 43 Corpus Juris, p. 1037, considers the duty of a municipal corporation as to its streets in connection with adjacent property, and points out that a city is not ordinarily bound to erect barriers along the streets to prevent travelers from straying out of the street limits. Then the text says this (quoted in the majority opinion by the [6] court of appeals): "On the other hand, if there are excavations, declivities, embankments, or other dangerous defects or obstructions close to the way, which, because of failure of the local authorities to erect fences or barriers, or to take other reasonable precautions, render the street itself unsafe, and a traveler, without fault on his part, but as a result of an inadvertent deviation or an accidental misstep, falls and sustains injury, the municipality will be liable . . ." Among the cases cited in support of the Corpus Juris text are Baldwin v. Springfield, 141 Mo. 205, 42 S. W. 717; Wiggin v. St. Louis, 135 Mo. 558, 37 S. W. 528; Bassett v. City of St. Joseph, 53 Mo. 290, 14 Am. Rep. 446. In the Baldwin case there was an excavation in the street into which a pedestrian fell at night. The excavation was guarded on its west side, but not on the south where the plaintiff fell in. In the Wiggin case the plaintiff, at night, fell into an excavation in the sidewalk. In the Bassett case the plaintiff fell into an excavation which was in part adjacent to the street. Neither of the Missouri cases cited in support of the Corpus Juris text is on facts similar to the facts in the present case and the same is true as to other cases cited. Plaintiff cites no case the facts of which are similar to the present facts.

We think that the dissenting opinion of Judge Anderson in the court of appeals states the law applicable to the present case. It would, we think, be beyond a reasonable requirement to say that the defendant city should have anticipated such extraordinary occurrences as came to deceased and his truck. If the foot brake had functioned there would have been no accident, and had nothing gone wrong with the foot brake it likely would have functioned. If de-

ceased had succeeded in applying the emergency brake there would have been no accident, and his failure to apply the emergency could have been due to excitement. It would seem reasonable to say that at 15 miles per hour when deceased entered Union he should have been able to have safely turned south on Union, and likely would have had it not been for the effect of discovering he had no foot brake, and may have had the same notion as to the emergency brake. As stated, deceased went over the east side of Union Street about 15 or 20 feet south of Buchanan Street. It is conceivable that another, under similar facts, might not go over until 40 or 50 feet or more south of Buchanan. In such case, if plaintiff can recover in the present case, it could be successfully contended in the conceived case that it was the duty of the city to extend the barrier 50 feet or more as the case might be. The steep incline or declivity on the east side of Union extended about 200 feet south of Buchanan. This question is pertinent: How far south of Buchanan should defendant extend the barrier to take care of traffic that might get out of control (without fault of the driver) while coming east down the 10 percent grade on Buchanan?

The minority opinion of the court of appeals cites and quotes from Briglia v. City of St. Paul, 134 Minn. 97, 158 N. W. 794, L. R. A. 1916F, 1216. That case was to recover for the death of an automobile driver who lost control of her car at the top of a hill. The car backed down the hill and over a bluff. In that case the court said: ''The locality in this case was remote from the center of the city, but we take into account that the traffic was large. Taking this into account, we think the city was not remiss in any duty to plaintiff. The roadway was not narrow. Its width of 26 feet was ample. Beyond that the gutter and the walk afforded protection against any ordinary deviation from the traveled road. Deceased did not suffer from any casual or ordinary deviation from the roadway, nor do we think there was any danger of her doing so. The course of the car was extraordinary. Stopping on a slight grade about 100 feet from the bluff edge, it commenced to back, and it backed nearly straight and over the precipice. We think the city should not be required to anticipate such unusual occurrences or to guard against them. It provided a roadway safe for all ordinary hazards of travel, and in that we think it performed its full duty. The city was not negligent.'' Several Minnesota cases are cited in the Briglia case and in addition the following are cited: King v. Village of Ft. Ann, 180 N. Y. 496, 73 N. E. 481; Herr v. Lebanon, 149 Pa. St. 222, 24 Atl. 207, 16 L. R. A. 106, 34 Am. St. Rep. 603. It is not necessary to further extend this opinion.

We are constrained to rule that defendant was not negligent in failing to extend the barrier south as plaintiff contends. It will not be necessary to consider other assignments. The judgment

should be reversed and it is so ordered. *Dalton* and *Van Osdol, CC.,* concur.

PER CURIAM:—The foregoing opinion by BRADLEY, C., is adopted as the opinion of the court. All the judges concur.