Johnnie D. ILGENFRITZ, Jr., by His Next Friend, John D. Ilgenfritz, Sr., Respondent,

v.

George QUINN, Wallace Carskadon and Larry Carskadon, Appellants.

No. 46809.

Supreme Court of Missouri,

Division No. 1.

Dec. 8, 1958.

Ely & Hibbard, Hannibal, for appellant Quinn.

J. Andy Zenge, Jr., Canton, for appellant Larry Carskadon.

Richard J. De Coster, Canton, Thomas R. McGinnis, St. Louis, for respondent.

HYDE, Presiding Judge.

Action for $40,000 damages for personal injuries sustained in a collision between a car in which plaintiff was riding, with defendant Larry Carskadon, and a truck driven by defendant Quinn. The case was dismissed as to Wallace Carskadon, the owner of the car. The jury found against plaintiff and for both defendants. The court sustained plaintiff's motion for a new trial and both defendants have appealed. Defendants each contend that plaintiff failed to make a jury case; and that they were entitled to a directed verdict.

The collision occurred in Canton on Highway 16, which comes into town from the west on White Street. Quinn was driving his one-ton panel truck east down a long hill, called "cemetery hill", and was followed by defendant Larry Carskadon (hereinafter called Carskadon) driving an Oldsmobile car. It was dark (about 7:45 P.M. in April) and both had their lights

on. Quinn intended to turn into his driveway on the south side of the highway, part way down the hill. The highway was 35 feet wide, with blacktop pavement 23 feet wide, and there was a space six feet wide on the south side between the edge of the pavement and the curb; and there was a sidewalk on that side. There was also a similar six-foot shoulder on the north side, but there was a high, steep embankment sloping down to the cemetery on that side. There was a center line marked in the middle of the pavement. It was about two-tenths of a mile from Quinn's driveway (which was 15 feet wide) to the top of the hill. The speed limit on the street was 35 miles per hour, and there was a sign so stating at the city limits just beyond the top of the hill.

The only account of the occurrence was that given by Quinn. Plaintiff offered admissions from Quinn's deposition and some he made to the investigating patrolman; but he testified fully concerning these matters as a defense witness. He said he came in from his farm that evening and drove east down the hill. Another car was following him so he slowed down to about 25 miles per hour and, let it pass him about 800 feet west of his drive. There were no westbound vehicles in sight. Quinn continued at the same speed until he got about 100 feet west of his driveway. At about that point he looked in his rear view mirror and saw a car about 800 to 1,000 feet up the hill behind him. He slowed down to about 10 to 15 miles per hour to make his turn, and when 50 to 60 feet west of his driveway he looked in his mirror again and saw the car behind him about 600 to 700 feet. He gradually swung his car to the left, about three or four feet in the last 100 feet from his drive, but said he never got over the center line onto the left (north) side of the pavement. (At one point in his cross-examination, he indicated a less gradual swing to the center of the pavement.) He said: "You can't turn in a short driveway without you get to the center line;" that

"in order to turn right, you have to get over to the left side;" and that he started the right turn when 15 or 20 feet west of the driveway. He gave no hand signal of his intention to turn, and his truck did not have directional signals. The truck had a standard rear stop light, and he had not checked it; but said other lights on his truck were working properly. Before he reached the driveway his truck was struck, and he was knocked unconscious, but regained consciousness in a few minutes. Plaintiff and Carskadon were both knocked unconscious and remained unconscious for several days. Both had a retrograde amnesia and could remember nothing that occurred from the time they left Carskadon's grandmother's farm to start on their trip to town.

Patrolman Bair who investigated the collision a few minutes after it occurred found a scar, gouged out place, in the blacktop at the west edge of the Quinn driveway 20 feet south of the north edge of the blacktop and nine feet north of the south curb, which the parties agree was the point of impact. The Carskadon car left skid marks beginning 54 feet west of the point of impact and ending there, from northwest to southeast in the eastbound lane of traffic. The Carskadon car was found at the south curb 84 feet east of the point of impact, and the truck was on the south sidewalk 241 feet east of the point of impact. The most damage to the car was to its front part, while the main damage to the truck was on the right side; but the frame and body on the left side were bent out at a point opposite the place of damage on the right side, indicating that the front of the car struck the middle of the truck on the right side.

■ On behalf of Quinn it is conceded that his failure to give a hand signal was a violation of Sec. 304.019 RSMo 1949, V.A.M.S., Laws 1953, p. 587; but it is contended that this was not negligence under the circumstances and that, even if it was, it was not a proximate cause of the col-

lision. His contention is that under the circumstances giving such a signal could not have prevented the collision. He argues that this omission could not have been the cause of the collision, since the driver of the other car failing to see Quinn's truck (which he assumes to be true), in front of him making the turn, could not possibly have seen a hand signal if it had been given. Quinn says: "Where two or more persons commit wrongful acts and any one of them but not all may have caused the injury to plaintiff and the evidence makes it uncertain which of the alleged wrongdoers actually caused the injury or makes it uncertain whether or not the injuries were caused by some act for which no one was to blame, there is no sufficient proof of causation and plaintiff may not recover."; citing Pedigo v. Roseberry, 340 Mo. 724, 102 S.W.2d 600, 608. (However, as hereinafter stated, we think there was evidence to show that plaintiff's injury was caused by concurring negligence of both defendants.) On his contention that his failure to give a hand signal could not have been a cause of the collision, Quinn also cites Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240; Kane v. Chicago, B. & Q. R. Co., Mo.Sup., 271 S.W.2d 518; Holman v. Chicago, R. I. & P. R. Co., 62 Mo. 562. Quinn also says his failure to give a hand signal was not negligence because "it did not create an unreasonable risk of harm since at the time Quinn failed to give the signal the Carskadon car was so far behind him that no reasonable person in Quinn's position could have foreseen that the Carskadon car would overtake and collide with him", citing Dowell v. City of Hannibal, 357 Mo. 525, 210 S.W.2d 4; Frerichs v. Eastern Nebraska Public Power Dist., 154 Neb., 777, 49 N.W.2d 619; and also says "for the same reason Quinn's conduct did not involve an unreasonable risk to the plaintiff; the plaintiff was an unforeseeable plaintiff", citing Karr v. Chicago, R. I. & P. R. Co., 341 Mo. 536, 108 S.W.2d 44; Palsgraf v. Long Island R. Co., 248 N.Y.

339, 162 N.E. 99, 59 A.L.R. 1253; also cited is Prosser on Torts, 2d Ed., Secs. 44 and 49; A.L.I. Restatement of Torts, Secs. 430, 441, 442 and 447 and Law Review articles.

The negligence submitted against Quinn was that he intended to and did turn his vehicle to the right to leave said highway; that, in so turning his said vehicle, he carelessly and negligently failed to extend his arm at an angle above horizontal so that the same might be seen in front of and to the rear of his vehicle; and that he carelessly and negligently failed to approach the intersecting roadway as near as practicable to the right side of said highway. We think these were jury issues because Quinn's statements as to the several positions of the Carskadon car and his truck were only estimates and because of the physical facts shown. While we think there was substantial circumstantial evidence to show that the Carskadon car was driven at a speed considerably in excess of the speed limit, we think the jury could reasonably infer that Quinn was negligent in turning in front of it without giving a hand signal. It does not conclusively appear in this case, as in Branstetter v. Gerdeman, supra, 274 S.W.2d loc. cit. 246, that Carskadon would not have seen the hand signal if it had been given. According to Quinn's own estimates, the Carskadon car had traveled 300 to 400 feet while his truck traveled 50 feet, which was an indication that it was being driven faster than the speed limit, and he went about 50 feet farther and turned sharply to the right, without again looking at the car before turning. Moreover, Quinn turned his car to the left to the center of the pavement before making the right turn, which could have indicated that he intended to make a left turn instead of a right turn. (He said his truck never got over the center line, but this was partly based on his statement that "you know just about where you pull when you drive in a driveway for four or five years. * * * So I would say I never pulled over the center line at that time.")

Under these circumstances, we think the jury could reasonably infer that giving a signal to indicate which way he intended to turn could have prevented the collision. As to Quinn's argument that Carskadon could not have seen a hand signal if it had been given, this is on the assumption that he did not see the truck, which the jury was not compelled to believe. While the jury could have found that Carskadon did not see the truck (because he ran into it), it does appear that he did have his brakes on for 54 feet before he struck it, and we think the jury could reasonably have found that he did see it but could not determine that it was going to make a sharp right turn into the driveway. We therefore, hold that the jury could reasonably find that Quinn's failure to give a signal to show his intention to make a right turn was a proximate cause of plaintiff's injury and that plaintiff made a jury case against Quinn.

On behalf of Carskadon, it is contended that there was no evidence to show any negligence or, if there was, that it was a proximate cause of the collision, citing some of the same cases cited by Quinn. It is argued that it would be necessary to pile inference on inference to infer any negligence on his part and that "you must leave completely to the realm of speculation and conjecture of what this negligence consisted." The basis stated for that argument is that it would be necessary to infer that Carskadon was driving and then infer from that he was negligent. However, these inferences are based on different facts. The jury could find that Carskadon was driving from the facts that the car belonged to his uncle who gave him permission to use it; that plaintiff was only 14 years old and had been invited by Carskadon to go with him to his grandmother's farm; that when they started to town, plaintiff got in the front seat on the right side of the car; and that after the collision, Carskadon was found under the wheel in the driver's seat. Likewise, the jury could find that Carskadon operated the car "at a high, dangerous and excessive rate of speed" and that he "failed to keep and maintain a reasonably careful and vigilant lookout for other vehicles" (both of which were submitted) from the physical facts to which the investigating patrolman testified and the details of the occurrence related by Quinn in his testimony, all of which are hereinabove stated and will not be repeated. We, therefore, hold that plaintiff made a jury case against Carskadon.

The trial court granted a new trial "on the grounds of the giving of a certain instruction to the jury, to-wit, Instruction K". This instruction, given at the request of Carskadon, was as follows: "The Court instructs the jury that the charge laid by the plaintiff against the defendant Larry Carskadon is one of negligence. You cannot presume that the defendant Larry Carskadon in this case was negligent. In other words, plaintiff may recover on said charge of negligence only if such charge is sustained by the preponderance, that is, the greater weight of the credible evidence to the reasonable satisfaction of the jury that the charge is true as laid, and it does not devolve upon the defendant to disprove the charge, but rather the law casts the burden of proof in respect of it upon the plaintiff, and unless such charge of negligence is sustained by the preponderance, that is, the greater weight of the credible evidence *to the satisfaction of the jury,* your verdict shall be for the defendant, Larry Carskadon." (Emphasis ours.)

■ We considered a similar instruction in Machens v. Machens, Mo.Sup., 263 S.W.2d 724, 731, which required proof "to your satisfaction", and after reviewing the cases, said: "We cannot approve instruction No. 1 * * *. We certainly have sufficiently warned the bench and bar against inserting such phrases in burden of proof instructions." However, in that case, we noted there was another correct burden of proof instruction, and, since the trial court overruled the motion for new trial, we said: "While such an instruction, containing these 'satisfaction' phrases

should not be given, we do not think we can hold it prejudicial under the circumstances of this case and in connection with the entire charge." Nevertheless, we pointed out that "if the trial court granted a new trial on the ground that the use of both phrases was so misleading as to be prejudicial in the particular case, we would defer to that ruling." Here the trial court has done so, and we will affirm its ruling.

■ However, we note that a burden of proof instruction, which was not subject to this criticism, was requested by Quinn and given by the court; so this incorrect standard of proof was not required for a finding in his favor. We might take this into consideration in determining the correctness of the court's ruling granting a new trial against both parties, were it not for plaintiff's contention that in any event a new trial was properly granted against Quinn because of giving Instruction A, submitting negligent speed of Carskadon as the sole proximate cause. The trouble with that instruction is it completely ignores the admitted failure of Quinn to give any signal, which we have held the jury could reasonably have found to have been a concurring proximate cause. It did not require a finding that such a signal would not have been seen and useless, as Quinn now contends. Therefore, we hold that a new trial was properly granted against Quinn.

The order granting a new trial as to both defendants is affirmed and cause remanded.

DALTON and HOLLINGSWORTH, JJ., concur.

WESTHUES, J., concurs in result.

WESTHUES, Judge (concurring).

I concur in the ruling that the trial court was justified in granting a new trial because of error in instruction K. It is my opinion that instruction K is erroneous and that such instructions have no place in civil cases.

A plaintiff in a civil case, to justify a verdict in his favor, is required to prove his case by a preponderance, that is, the greater weight of the credible evidence. A requirement that he must do so "to the reasonable satisfaction of the jury" or "to the satisfaction of the jury" places a greater burden on a plaintiff than the law requires. Instructions on the burden of proof containing either of the phrases mentioned should be declared to be prejudicial and erroneous irrespective of the ruling of a trial court on a motion for new trial. We have heretofore, in a number of cases, held instructions containing the phrase "to the reasonable satisfaction of the jury" not to be prejudicially erroneous. This is contrary to the great weight of authority. See Rouchene v. Gamble Const. Co., 338 Mo. 123, 89 S.W.2d 58, loc. cit. 63(12); Nelson v. Evans, 338 Mo. 991, 93 S.W.2d 691, loc. cit. 694–696(3, 4) (5); Blunk v. Snider, 342 Mo. 26, 111 S.W.2d 163, loc. cit. 165, 166(7, 8); and 32 C.J.S. Evidence, § 1020, p. 1047.

In my opinion, instruction K should be held to be erroneous because it contains the phrase "to the reasonable satisfaction of the jury" even if the phrase "to the satisfaction of the jury" had been omitted.

I, therefore, concur in the result.