Jeffrey S. WARNER et al., Appellants,

v.

Roger Keith PRUETT et al., Respondents.

No. 41000.

Missouri Court of Appeals, Eastern District, Division Three.

April 22, 1980.

---

Leon M. Newman, Newman & Bronson, St. Louis, for appellants.

Gray & Ritter, Kortenhof & Ely, St. Louis, for respondents.

REINHARD, Judge.

In Count I, plaintiff, Jeffrey S. Warner, sued for personal injuries arising out of an automobile accident which occurred on April 18, 1975. In Count II, his father, Buddy N. Warner, sued to recover the amount he paid for his son's medical expenses which resulted from the injuries received in the accident. Defendants were Roger K. Pruett and Charles R. Blaisdell. The jury returned a verdict in favor of both defendants as to Count I and in favor of plaintiff, Buddy N. Warner, against both defendants as to Count II in the amount of $900. Both plaintiffs and defendant, Charles R. Blaisdell, appealed.

On April 18, 1975, Jeffrey Warner, a minor, missed his bus and was late for school. He was hitchhiking when defendant Pruett stopped and gave him a ride. Riding with Pruett as a passenger was Richard Garrett. Jeffrey got in the back seat of the Pruett automobile and was looking out the right rear window at the time of the accident. The Pruett vehicle was going north on Shackleford Road in St. Louis County. At the point of impact, the road has two lanes going north. The accident occurred near the point where Shackleford Road intersects with Kingsford.

Defendant Blaisdell testified that just before the accident he was on his way home from work. He had intended to make a right turn onto Kingsford and was in the curb-bound lane of Shackleford. Blaisdell

stated that he had not made a turn signal. He had last looked into his rear view mirror one block ahead of the accident point and had not seen any traffic. Upon hearing the squeal of brakes, Blaisdell again looked into his rear view mirror and saw the front end of a car. He accelerated in an attempt to get away from it.

Defendant Pruett first observed defendant Blaisdell's vehicle when he was 300 to 400 feet away. At that time, according to Pruett, Blaisdell's vehicle was barely moving or stopped. Pruett's speed at impact was between five to ten miles per hour. Blaisdell was in or near the intersection of Kingsford. According to Pruett's testimony, Blaisdell was in the lane nearest the center line. Defendant Pruett intended to stop behind Blaisdell but changed his mind when he was about 150 feet away and then decided to pass defendant, Blaisdell. He began his pass about 50 feet behind Blaisdell. According to Pruett, defendant Blaisdell made a turn to the left and then jerked back to the right at which time Pruett jerked his car to the right, put on his brakes, and eventually slid into the Blaisdell vehicle. Pruett testified that he observed defendant Blaisdell's vehicle travel at least one foot over into the southbound lane of Shackleford as it turned to the left. Pruett said that he did not know if Jeffrey was injured, that, "[w]e all asked if anybody was hurt. And he said no." Pruett was aware that by the time an ambulance had arrived, Jeffrey had developed some pain.

Garrett's testimony as to the location of defendant Blaisdell's vehicle on the highway and his sudden turn to the left and then back to the right was substantially the same as Pruett's. Garrett lifted up the back seat of the car so that Jeffrey could get out of the car. He noticed no signs of injury to Jeffrey. Later, however, he saw Jeffrey lying on the ground, then put on a stretcher and placed in the ambulance.

Jeffrey testified that when he first got out of the car, he felt a burning sensation in his left lower back and was therefore conveyed to Christian Hospital Northwest by ambulance. He underwent emergency treatment and was released. Within the next four days he began vomiting, suffered headaches and severe low back pain as well as pain upon urination. Jeffrey was admitted on the evening of April 22, 1975, to Christian Hospital Northwest and stayed there until May 2, 1975.

His doctor, Dr. August Cabonce, a general practitioner, diagnosed his injury as low back sprain. Doctor Cabonce testified in answer to a hypothetical question that he believed this injury was caused by the accident. However, he also testified that he was unable to find any objective symptoms.

On March 12, 1976, Jeffrey entered the United States Air Force, but received a medical discharge eighteen days later. Plaintiff's attorney read from the "Medical Board Report" relating to this discharge; the final diagnosis was: "Chronic low back pain."

Jeffrey held numerous jobs from the time of the accident until the time of trial. He testified that he lied on job applications by failing to disclose that he had a back injury so as to obtain the jobs. He admitted that he had passed various medical examinations including the one preliminary to entering the service.

Jeffrey's father, Buddy M. Warner, paid $118.50 for the emergency service on the date of the accident and $919.00 for the ten-day hospital stay. He also paid Dr. Cabonce's bill for $173.00; Dr. Cova's bill for $62.00; and Dr. Brancato's bill for $25.00.

Plaintiff's verdict directors against defendant Pruett required a finding that "defendant Roger Pruett's automobile came into collision with the rear of defendant Charles Blaisdell's automobile, or defendant Roger Pruett drove at an excessive speed." His verdict director against Blaisdell required a finding that "defendant Charles Blaisdell failed to signal his intention to turn. . . ."

Verdict directors of plaintiff, Buddy Warner, required that the jury find, "as a direct result of such negligence, plaintiff Jeffrey Warner was injured and as a direct result

of such injury plaintiff Buddy Warner sustained damage." The jury reached an unanimous verdict against plaintiff, Jeffrey Warner, and in favor of both defendants as to Count I. Nine members of the jury signed a verdict in favor of plaintiff, Buddy Warner, and against both defendants upon Count II in the amount of $900.

Plaintiffs, in their sole point on appeal, contend: "The court erred in failing to set aside the verdict of the jury and render a new trial for both plaintiffs because said verdict was inconsistent and contradictory when the jury found against the allegedly injured plaintiff Jeffrey S. Warner on Count I and in favor of his father, Buddy M. Warner on his derivative cause of action under Count II." Defendant Blaisdell in his appeal contends that the plaintiffs failed to make a submissible case against him "by failing to show that any act or omission by Blaisdell was the proximate cause of any injury plaintiff may have sustained."

■ We first conclude that plaintiffs made a submissible case against defendant Blaisdell. There was substantial evidence that he turned to the left just prior to the collision and he admitted that he made no signal. Defendant Blaisdell contends that the failure to signal was not the proximate cause of the accident. He argues that he looked into his rear view mirror one block before he began to turn and saw no vehicles. Therefore, argues Blaisdell, he had a right to assume no car would travel an excessive speed to catch up with him and necessitate signalling. He points to defendant Pruett's attempt to pass him within 100 feet of the intersection while not sounding a horn.

■ The test as to proximate cause is: . . . whether, after the occurrences, the injury appears to be the reasonable and probable consequences of the act or omission of the defendant. The negligence of the defendant need not be the sole cause of the injury. It is sufficient that it be one of the efficient causes thereof, without which the injury would not have resulted. A party is held liable if his negligence, combined with the negligence of others, results in injury to another.

*Floyd v. St. Louis Public Service Company*, 280 S.W.2d 74, 78 (Mo.1955). Blaisdell's argument that defendant Pruett attempted to pass him within 100 feet of an intersection and did not sound the horn does not relieve him of his duty to signal. *Ilgenfritz v. Quinn*, 318 S.W.2d 186 (Mo.1958) involves facts somewhat similar to those in this case. There, the evidence showed defendant Quinn turned his vehicle to the left and then to the right without signalling. Quinn contended that the auto which collided with his "was so far behind him that no reasonable person in Quinn's position could have foreseen that the Carskadon car would overtake and collide with him." *Id.* at 189. There the court found that the failure to signal was a proximate cause. As in *Quinn*, we believe a jury could reasonably infer that the giving of a turn signal could have prevented the accident.

We now consider plaintiffs' contention that the verdicts are inconsistent and that the court erred in failing to set aside the verdicts and render a new trial. The parties have cited us to various cases wherein the Missouri Appellate Courts have considered the matter of inconsistent verdicts, but all of these cases are distinguishable from the case at bar.

■ An injury to a minor gives rise to two causes of action: one on behalf of the minor for his personal injuries and one on behalf of the parents for loss of services and for expenses necessarily incurred by the parents in treatment of the child. *Garrison v. Ryno*, 328 S.W.2d 557, 563–64 (Mo. 1959).

■ Here, plaintiff properly sued in a two count petition. The father's action was derivative and the jury was instructed that the verdict should be for plaintiff, Buddy Warner, and against either or both defendants if it believed that defendants were negligent and "as a direct result of such negligence plaintiff Jeffrey Warner was injured and as a direct result of such injury

plaintiff Buddy Warner sustained damages." Under the instructions, in order to find for plaintiff Jeffrey, the jury was required to find negligence on the part of either or both defendants and that Jeffrey was damaged thereby.

Having found for both defendants on plaintiff Jeffrey Warner's cause of action, the jury must have determined that either the defendants were not negligent or that plaintiff was not injured. In finding for plaintiff Buddy Warner and against both defendants under the instructions, the jury necessarily found that both defendants were negligent and that Jeffrey was injured. Such findings upon the same evidence are inconsistent. The court should have advised the jury that it could not accept the verdicts in the form tendered and then returned the jury to the jury room for further deliberations.

Although we find no Missouri cases which have confronted the specific inconsistent verdicts found here, we do find cases in other jurisdictions. In *Reilly v. Shapmar Realty Corp.*, 267 App.Div. 198, 45 N.Y.S.2d 356 (1943) and *Smith v. Richardson*, 277 Ala. 389, 171 So.2d 96 (1965), the juries found for the parents' claims and against the minor children. In both cases, the appellate courts reversed and remanded for new trials.

Defendants argue that since the issue of injury was hotly disputed that in effect the jury found no injury to the son but attempted to reimburse the father for some of his hospital bills.[1] This reimbursement would be contrary to the given instructions which required a finding of injury to the son before permitting recovery by the father.

"When . . . inconsistent verdicts are rendered, we incline to the view that sound practice requires both verdicts to be set aside at once, without attempting, by

analysis of the evidence or otherwise, to discover whether either should be allowed to stand. No other course is safe, for it cannot be told with reasonable certainty what facts the jury found." *Gray v. Brooklyn Heights R. Co.*, 175 N.Y. 448, 450, 67 N.E. 899, 900 (1903).

 We agree with the view stated in *Gray* and reverse both verdicts and remand for a new trial on all issues.

DOWD, P. J., and CRIST, J., concur.

---

1. Defendant Pruett cites us to the case of *Wise v. Towse*, 366 S.W.2d 506 (Mo.App.1963). There, our Kansas City brethren said: "Even though the jury might find Forrest Wise suffered no actual injury to his person, if through defendant's admittedly negligent act of causing the collision this special damage proximately resulted to Forrest Wise, he is entitled to recover for it, for in such an instance actual loss has resulted from the commission of the negligent act."

Here, plaintiff Buddy Warner's verdict director specifically required a finding of injury to the son before it permitted recovery for the father.